**Charles G. BOOGAERTS, d/b/a Boogaerts Company, Plaintiff–Appellant,**

v.

**The BANK OF BRADLEY, Lane Pierce, Randy Griffin and John Henderson, Defendants–Appellees.**

No. 91–2011.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1992.

Decided April 10, 1992.

Carl W. Cleveland, New Orleans, La., for plaintiff-appellant.

E. Keith Carter, Shreveport, La., and Phillip N. Cockrell, Texarkana, Tex., on brief for defendants-appellees.

Before JOHN R. GIBSON, BOWMAN, Circuit Judges, and LIMBAUGH,* District Judge.

PER CURIAM.

Plaintiff appeals the order of the District Court dismissing his RICO claims against all defendants as a Rule 37 sanction. The sole issue is whether the District Judge abused his discretion in dismissing plaintiff's RICO claims as a sanction against plaintiff's attorney because of the attorney's discovery abuse. We hold the District Judge did not abuse his discretion, and affirm.

I. BACKGROUND

Plaintiff sued the Bank of Bradley, located in Bradley, Arkansas, and some of its officers, directors and former employees for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO). He also asserted several common law claims for breach of fiduciary duty, fraud and negligence. Plaintiff requested $3.5 million actual damages, $1 million for loss of credit reputation and emotional distress and $10 million punitive damages.

Elaborate discovery ensued. Numerous depositions were taken, most at defendants' request, and several sets of interrogatories were propounded by all parties, as were requests for admissions. Voluminous letters were sent and telephone calls made between counsel as to discovery, almost all of which involved the RICO claims. Ulti-mately, the District Judge [1] assigned these disputes to a United States Magistrate Judge [2] for resolution. The Magistrate Judge conducted a hearing on February 25, 1991 in an attempt to dispose of the discovery problems.

The District Judge first addressed the problem on October 1, 1990 in considering a motion to compel, when he directed plaintiff to respond to defendants' interrogatories ten days from date. Answers were filed October 23, 1990.

Defendants' counsel wrote plaintiff's attorney on November 8, 1990 setting out reasons why the October 23, 1990 answers were evasive and incomplete. Receiving no reply, a second motion to compel more complete answers was filed by defendants. On December 14, 1990, the Magistrate Judge ordered plaintiff to supplement his answers "as outlined in defense counsel's letter of November 8, 1990, ..., within 14 days." There was no response to this order by plaintiff.

Accordingly, on January 22, 1991, the Magistrate Judge recommended to the District Judge that plaintiff be precluded from pursuing his RICO claims at trial because of his failure to obey a court order to supplement answers. Rule 37(b)(2).

In the interim, at defendants' request, the Magistrate Judge also ordered plaintiff, on February 5, 1991, to produce certain documents originally requested on April 18, 1990 as there had been no response to the April 18, 1990 request.

On February 6, 1991, plaintiff filed an opposition and response to the orders of the Magistrate Judge asserting everything requested in the interrogatories and requests for production had been produced voluntarily. This set the stage for the February 25, 1991 hearing before the Magistrate Judge.

---

* The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

2. The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas.

At the hearing, Carl W. Cleveland, plaintiff's attorney who has his main professional office in New Orleans, Louisiana, testified as did plaintiff, defendants' counsel, and other witnesses. Cleveland maintained that while he may not have responded in detail to all of defendants' interrogatories, he responded adequately. He felt that the details could be gleaned from the thirteen depositions taken by defendants and the one deposition taken by plaintiff. He also thought he and defendants' counsel had a side agreement that nothing else need be produced or answered.

Following the hearing, a report and recommendation was filed by the Magistrate Judge on March 8, 1991. The Magistrate concluded "that Cleveland, on behalf of plaintiff, deliberately, willfully and in bad faith refused to amend the answers to interrogatories as ordered and attempted, albeit unsuccessfully to obfuscate the issues in the objections to the Magistrate's report and at the hearing."

The interrogatories in question centered on the RICO claims. Information was sought about the enterprise, predicate acts, patterns of racketeering activity, the scheme, the relationship between RICO violations and the damages claimed and the identity of witnesses and the nature of their testimony.[3] The answers filed gave either general responses or referred to allegations in the complaint which were unspecific.

The case was originally set for trial on September 24, 1990, but was postponed to April 15, 1991 because of the discovery delay. Thus, at the time of the hearing before the Magistrate Judge on March 8, 1991, defendants were faced with a trial five weeks away and little discovery response as to the RICO claims.

The Court is not impressed with Attorney Cleveland's contentions as to side agreements with defendants' counsel or that the information requested could be obtained from other sources produced such as boxes of documents or depositions. In fact, at the hearing before the Magistrate Judge, Cleveland displayed a cavalier attitude and most of his testimony did not support his position.

Cleveland came into Court armed with boxes of depositions, ledger books and other documents, and piled them in front of the bench asserting that everything defendants want is there. The Magistrate Judge, obviously perturbed, stated, "Sir, sit down, please. Let me tell you. Do you honestly expect that you're just going to put this all here and you're just going to have me sort through it and review it?" Magistrate hearing transcript at 16. Cleveland's response was innocuous.

Attorney Cleveland, in his testimony, made additional statements, many of which were demeaning to the Court. He objected to "technical compliance" with the Court's order. "That exercise is a ridiculous one that I would object to complying with, your Honor." He stated, "I don't mean to be arrogant and argumentative, but I am a trial lawyer. I spend my days and nights litigating complex litigation. To go through an exercise where it's suggested that the way to conduct discovery is to file interrogatories, take depositions and then convert the depositions into answers to interrogatories is just preposterous." Magistrate hearing transcript at 38.

In a final statement to the Court, Cleveland extolled, "You're exasperated and irritated with me because I responded informally to Mr. Carter and in a sense, created the problem, and I think you're right about that. I confess that." Cleveland also opined, "Now it seems to me that ordering me to go answer those interrogatories is a monumental waste of time. It's not going

---

**3.** Attorney Cleveland attempts to diminish the importance of the RICO interrogatories by suggesting they are of the textbook boiler-plate type, and therefore of little value. Yet, they were modeled after the RICO Civil Case Statement Standing Order automatically issued in Louisiana, where Cleveland has his main practice. This Court notes that many U.S. trial courts, on their own, issue such interrogatories immediately after any case is filed which has a RICO count. One purpose for the Court doing this on its own initiative is to weed out frivolous claims early on. Cleveland, who by his own admission is an experienced trial lawyer, should be intimate with the need to answer such interrogatories fully and with particularity.

to help Mr. Carter understand what this case is about." Magistrate hearing transcript at 101 and 103.

It will serve little purpose to elaborate further on the Magistrate Judge's recommendation following the February 25, 1991 hearing. Her opinion is complete and reveals a total disregard by plaintiff's counsel of the orders of the Court. Counsel's action, or inaction, was, in fact, deliberate, willful and in bad faith.

The District Judge accepted the Report and Recommendation of the Magistrate Judge and on April 1, 1991, dismissed plaintiff's RICO claims as to all defendants as a sanction. The common law claims of plaintiff remain intact, and plaintiff may still pursue them.

## II. DISCUSSION

The parties do not dispute that Rule 37(b)(2)(C) authorizes the Court to exercise discovery abuse sanctions by dismissing a parties' action, or striking pleadings or entering a default judgment against the abusive litigant.

■ The test generally applied in determining whether the District Judge abused his discretion in dismissing claims as a discovery sanction is whether the discovery abuse was in bad faith or deliberately intentional or willful. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976). *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 4095, 2 L.Ed.2d 1255 (1958); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1155 (8th Cir.1983).

■ The District Court, adopting the report of the Magistrate Judge, clearly felt plaintiff's counsel acted in bad faith. As stated, the Magistrate Judge concluded in her order of March 8, 1991 "that Cleveland, on behalf of plaintiff, deliberately, willfully and in bad faith refused to amend the answers to interrogatories as ordered and attempted, albeit unsuccessfully, to obfuscate the issues in the objections to the Magistrate's report and at the hearing."

There is ample evidence in the transcript to support the Magistrate Judge's findings and further detail of it is unnecessary.

■ Although the sanction was imposed against the plaintiff, it is of no consequence that the discovery abuse perpetrated was by counsel rather than the plaintiff-client. A litigant chooses counsel at his peril. Counsel's disregard of his professional responsibilities can lead to extinction of his client's claims. *Cine Forty–Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2nd Cir.1979); *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 240–241 (8th Cir.1977). It is a "well-established principle that a party is responsible for the actions and conduct of his counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions." *Denton*, at 241.

■ Appellant argues that a less strenuous sanction would have been more appropriate under the circumstances of this case. Yet, it is not the function of this Court to substitute its judgment for that of the trial judge. There is ample evidence to support the sanction ordered and it will not be disturbed. In any event, all of plaintiff's common law claims remain intact. They may still be prosecuted. If plaintiff has a legitimate claim of fraud, breach of fiduciary duty and negligence against defendants he may still prevail and have his remedy even though the RICO claim has been dismissed.

Accordingly, the order of the trial court dismissing plaintiff's RICO claims is AFFIRMED.