### In re Albert D. NARCISO and Kathleen Narciso.

The ESTATE OF Sara O. ECKEL, Gary Eckel as Administrator of the Estate of Sara O. Eckel, Plaintiffs,

v.

Albert D. NARCISO, Individually and d/b/a Apogee Appraisal Service and Kathleen Narciso, Individually and d/b/a Insurance Marketing Service a/k/a Kathleen McMillon, Defendants.

Bankruptcy No. 91–10129 S.
Adv. No. 91–1013.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Oct. 7, 1992.

**914**

Jeffrey Hance, Batesville, AR, for plaintiffs.

Loyd Harper, Ash Flat, AR, for defendants.

James F. Dowden, Trustee, Little Rock, AR, U.S. Trustee.

## ORDER TO SHOW CAUSE

MARY D. SCOTT, Bankruptcy Judge.

This cause came before the Court upon the trial on the Complaint to Object to Dischargeability of Debt Pursuant to 11 U.S.C. § 523, filed on August 19, 1991. The defendant answered with a general denial. Trial was held on July 28, 1992, Jeffrey Hance appearing for the plaintiffs and Loyd Harper appearing for the defendants.

During trial of this matter, on three separate occasions, the testimony of the defendants was in direct conflict with information given in Interrogatories during the discovery process. In each instance, the defendants declared that they had not given that answer in an interrogatory or that they had never seen the interrogatories.

1. On page 74 of the transcript, the following examination of Ms. McMillon appears:

Q  I'm going to show you copies—it's styled "Supplemental—" it has the heading of the case, and it says "Supplemental Response to Interrogatories."

A  Uh-huh.

Q  And I'll tell you that was provided by your attorney.

A  Uh-huh.

Q  And it shows certain payments, and it's a copy, an unsigned copy. Did you sign the original of that?

A  No, I didn't.

Q  So you don't know whether the information provided in those answers to interrogatories is correct or not?

A  I don't think I've ever seen this before.

2. On page 80 of the transcript, the following examination of Mr. Narciso appears:

Q  But you could write checks on it—

A  Yes.

Q  And you were vice-president and a shareholder?

A   Well, on many occasions Kathleen was out of town, and like the accountant and rent and people had to be paid, and I was authorized to write checks to them.

Q   Okay. I am going to show you a response to interrogatories which was forwarded to me by your attorney.

A   Uh-huh.

Q   And would you please look at Interrogatory Number 25, sir?

A   Yes.

Q   Okay. That shows an insurance marketing account, asked about who the signatory was on it?

A   Uh-huh.

Q   And who does it say the signatory on that account is?

A   Kathleen McMillon.

Q   Does it list you?

A   No, but I signed the signature card with the bank.

Q   Okay. So that information, those response to interrogatories are just incorrect?

A   I guess.

3.   On page 86–87 of the Transcript, the following examination of Mr. Narciso appears:

Q   In the responses to interrogatories that you previously provided me, it first indicated that there were no payments made to Mrs. Eckel and then there were payments made to Ms.—

A   There were three—I never said there were no payments made. There were three payments made. I didn't cite this. I don't know how to cite it.

Q   Mr. Eckel [sic], I'm going to show you responses to interrogatories that were supplied to you pursuant to the rules of discovery, and in there in the first question—one of the questions is were there payments made to Mrs. Eckel, and the response is, "No, no payments."

Are you telling me that was not true, you never said that?

A   I would not say that. I know I made three payments to the lady.

Q   So responses to interrogatories that you supplied me were just totally untrue. You weren't the signatory—you were the signatory and now the response that say, "No payments were not [sic] made" was not true. You never said that?

A   No, I'm not saying anything was not true. You are. I did have all the authority in the world to sign checks through that account, and I have no recollection whatsoever of this statement. I know I made her three payments.

Q   That's what I'm saying, so you never made the statement—

A   I would say I did not make it.

Q   It was placed in the answer to interrogatories?

A   I've never seen this. I've never read that.

During these colloquies, it was clear to the Court that counsel for the plaintiff was surprised that the testimony conflicted with the information in the discovery responses. The points plaintiff attempted to make were material to his case. Indeed, in a situation such as this, where plaintiff must prove fraud by circumstantial evidence, without a non-adversarial witness,[1] obtaining truthful information is critical.

The questions asked in the interrogatories, as described above, were not matters which were subject to confusion or misinterpretation. For example, a question regarding the identity of persons authorized to use a bank account is extremely simple and easily subject to verification by the responding party. An incorrect answer to such a question raises very serious questions regarding the party's and counsel's compliance with the discovery rules.

Compliance with the discovery rules is crucial to the fair conduct of civil litigation. As noted by the Fifth Circuit:

Our system of civil litigation cannot function if parties, in violation of court orders, suppress information called for upon discovery. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.... The aim of [the] liberal discov-

---

1.   The victim of the defendant's fraud died prior   to the institution of suit.

ery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." ... It is axiomatic that "[d]iscovery by interrogatory requires candor in responding."

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345–46 (5th Cir.1978). The failure to truthfully answer interrogatories sabotages the concept of "fair trial," undermining the judicial system. The discovery rules are meant to serve as a vehicle for ascertainment of the truth; false answers subvert truth and truth seeking.

Rule 26, Federal Rules of Civil Procedure provides for sanctions upon discovery abuse:

> Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is: (1) consistent with these rules....
>
> If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

The fact that plaintiff was successful in spite of the false discovery answers does not diminish the harm to the conduct of a fair trial in this instance or to the judicial system in general. Plaintiff's success in proving his case does not obviate imposition of sanctions for violating the Federal Rules of Civil Procedure. When a party fails to answer, or incorrect answers are discovered prior to trial, the remedies may be tailored to the conduct and the harm to the opposing party. For example, unanswered requests for admissions are deemed admitted, or pleadings may be stricken. In this instance the manner in which the Court may address the false interrogatories is limited because plaintiff has been successful. However, this Court will not tolerate wilful misconduct during the course of litigation or trial. In the event that the misconduct of defendants' counsel or the defendants proves to have been wilful, this Court believes sanctions should be imposed as "an invaluable penalty and deterrent to be employed ... to thwart discovery abuse." *First American State Bank v. Continental Insurance Company*, 897 F.2d 319, 331 (8th Cir.1990).

During the course of trial three separate instances were brought to the Court's attention of incorrect interrogatory answers, indicating that the false interrogatory responses may have been wilful or made with reckless disregard. It further appeared from the testimony that defendants' counsel had failed to even consult with his clients regarding truthful answers. Accordingly, it is

ORDERED that the defendants shall personally appear and the attorney for the defendants' Loyd Harper shall personally appear on October 27, 1992, at 10:00 at the United States Courthouse, located at 615 S. Main St., Jonesboro, Arkansas and show cause why sanctions should not be imposed upon them [2] for failure to comply with Rule 26, Federal Rules of Civil Procedure, as outlined in this Order. It is

FURTHER ORDERED that counsel for Plaintiff, Jeffrey Hance, shall appear and submit to the Court any proof of damages related to the incorrect interrogatories.

IT IS SO ORDERED.

---

**2.** Sanctions may be imposed upon the individual defendants. "It is of no consequence that the discovery abuse perpetrated was by counsel rather than the [client]. A litigant chooses counsel at his peril. Counsel's disregard of his professional responsibilities can lead to extinction of his client's claims." *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir.1992).