**In re Albert D. NARCISO and Kathleen Narciso.**

**The ESTATE OF Sara O. ECKEL, Gary Eckel as Administrator of the Estate of Sara O. Eckel, Plaintiffs,**

v.

**Albert D. NARCISO, Individually and d/b/a Apogee Appraisal Service and Kathleen Narciso, Individually and d/b/a Insurance Marketing Service a/k/a Kathleen McMillon, Defendants.**

Bankruptcy No. 91–10129S.
Adv. No. 91–1013.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Dec. 15, 1992.

See also 149 B.R. 913, 149 B.R. 917.

Jeffrey E. Hance, Batesville, AR, for plaintiffs.

Loyd Harper, Ash Flat, AR, for defendants.

**528**

James F. Dowden, Little Rock, AR, trustee.

## ORDER IMPOSING SANCTIONS

MARY D. SCOTT, Bankruptcy Judge.

This cause came before the Court upon the *sua sponte* Order to Show Cause issued after trial on the Complaint to Object to Dischargeability of Debt Pursuant to 11 U.S.C. § 523. Trial was held on July 28, 1992, Jeffrey Hance appearing for the plaintiffs and Loyd Harper appearing for the defendants. Upon the entry of the Court's judgment in this Case determining the debt nondischargeable, the Court issued an Order to Show Cause to the debtors and their attorney why sanctions should not be imposed for discovery abuses. A hearing on the Order to Show Cause was held on October 27, 1992, at which both debtors, their attorney, and the attorney for plaintiffs appeared.[1]

During trial of this matter, on three separate occasions, the testimony of the defendants was in direct conflict with information given in Interrogatories during the discovery process. In each instance, the defendants declared that they had not given that answer in an interrogatory or that they had never seen the interrogatories.

1. On page 74 of the transcript, the following examination of Ms. McMillon appears:

Q I'm going to show you copies—it's styled "Supplemental—" it has the heading of the case, and it says "Supplemental Response to Interrogatories."

A Uh-huh.

Q And I'll tell you that was provided by your attorney.

A Uh-huh.

Q And it shows certain payments, and it's a copy, an unsigned copy. Did you sign the original of that?

A No, I didn't.

Q So you don't know whether the information provided in those answers to interrogatories is correct or not?

A I don't think I've ever seen this before.

2. On page 80 of the transcript, the following examination of Mr. Narciso appears:

Q But you could write checks on it—

A Yes.

Q And you were vice-president and a shareholder?

A Well, on many occasions Kathleen was out of town, and like the accountant and rent and people had to be paid, and I was authorized to write checks to them.

Q Okay. I am going to show you a response to interrogatories which was forwarded to me by your attorney.

A Uh-huh.

Q And would you please look at Interrogatory Number 25, sir?

A Yes.

Q Okay. That shows an insurance marketing account, asked about who the signatory was on it?

A Uh-huh.

Q And who does it say the signatory on that account is?

A Kathleen McMillon.

Q Does it list you?

A No, but I signed the signature card with the bank.

Q Okay. So that information, those responses to interrogatories are just incorrect?

A I guess.

3. On page 86–87 of the Transcript, the following examination of Mr. Narciso appears:

Q In the responses to interrogatories that you previously provided me, it first indicated that there were no payments made to Mrs. Eckel and then there were payments made to Ms.—

A There were three—I never said there were no payments made. There were three payments made. I didn't cite this. I don't know how to cite it.

Q Mr. Eckel [sic], I'm going to show you responses to interrogatories that were supplied to you pursuant to the rules of discovery, and in there in the

---

**1.** The Court had specifically directed that each of these persons appear at the hearing.

first question—one of the questions is were there payments made to Mrs. Eckel, and the response is, "No, no payments."

Are you telling me that was not true, you never said that?

A I would not say that. I know I made three payments to the lady.

Q So responses to interrogatories that you supplied me were just totally untrue. You weren't the signatory—you were the signatory and now the response that say, "No payments were not [sic] made" was not true. You never said that?

A No, I'm not saying anything was not true. You are. I did have all the authority in the world to sign checks through that account, and I have no recollection whatsoever of this statement. I know I made her three payments.

Q That's what I'm saying, so you never made the statement—

A I would say I did not make it.

Q It was placed in the answer to interrogatories?

A I've never seen this. I've never read that.

During these colloquies, it was clear to the Court that counsel for the plaintiff was surprised that the testimony conflicted with the information in the discovery responses. The points plaintiff attempted to make were material to his case. Indeed, in a situation such as this, where plaintiff must prove fraud by circumstantial evidence, without a non-adversarial witness,[2] obtaining truthful information is critical.

The questions asked in the interrogatories, as described above, were not matters which were subject to confusion or misinterpretation. For example, a question regarding the identity of persons authorized to use a bank account is extremely simple and easily subject to verification by the responding party. An incorrect answer to such a question raised very serious questions regarding the party's and counsel's compliance with the discovery rules. .

At the hearing, counsel for the defendants addressed only one of the incorrect interrogatory answers, asserting that he had changed an answer due to additional information from his client. He had completed the interrogatory without obtaining the information from his client because he could not reach her.

 Compliance with the discovery rules is crucial to the fair conduct of civil litigation. As noted by the Fifth Circuit:

> Our system of civil litigation cannot function if parties, in violation of court orders, suppress information called for upon discovery. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...." The aim of [the] liberal discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." ... It is axiomatic that "[d]iscovery by interrogatory requires candor in responding."

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345–46 (5th Cir.1978). The failure to truthfully answer interrogatories sabotages the concept of "fair trial," undermining the judicial system. The discovery rules are meant to serve as a vehicle for ascertainment of the truth; false answers subvert truth and truth seeking.

Rule 26, Federal Rules of Civil Procedure provides for sanctions upon discovery abuse:

> Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is: (1) consistent with these rules....
>
> If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the

---

**2.** The victim of the defendant's fraud died prior to the institution of suit.

person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Rule 26(g) is the appropriate rule where a party "erroneously certifies that a response has been read and that it comports with both the dictate and the spirit of the rule." *Syntex Pharmaceuticals International, Ltd. v. K–Line Pharmaceuticals, Ltd.*, 1988 WL 106314, at 3, 1988 U.S.Dist. LEXIS 11420, at 10 (D.N.J. Oct. 14, 1988).

■ The hearing held on October 27, 1992, confirmed the wilful disregard of the rules apparent from the events at trial. Counsel for the debtors appeared and addressed only one of the three abuses noted by the Court. Counsel stated that he had had difficulty in contacting Ms. Narciso during a period of time during the litigation. While Ms. Narciso confirmed her unavailability for a period of time, her unavailability does not excuse false answers in interrogatories. Extensions of time to answer may be obtained or a response indicating the lack of information may be supplied. Under no circumstances should the party wilfully or recklessly disregard the affirmative duty to correctly respond to discovery requests. The transcript of trial, set forth above, and the statements of counsel and the debtors during the October 27, 1992, indicate that neither the letter nor spirit of the discovery rules was followed.

Further, prejudice to the plaintiff resulted from these actions. In this particular situation, plaintiff could look only to the debtors for much of his factual information because the sole non-adversarial witness to the events was dead. Accordingly, truthful information was crucial to the litigation, preparation for and presentation at trial. During the litigation, during preparation, and during trial, the facts changed on a continuing basis. The actions of debtors and counsel thus inhered to them a perceptible trial advantage, improperly obtained. The change caused plaintiff's counsel to expend time and resources which should not have had to be expended, time and resources which were chargeable to the client.

■ The fact that plaintiff was successful in spite of the false discovery answers does not diminish the harm to the conduct of a fair trial in this instance or to the judicial system in general. Plaintiff's success in proving his case does not obviate imposition of sanctions for violating the Federal Rules of Civil Procedure. When a party fails to answer, or incorrect answers are discovered prior to trial, the remedies may be tailored to the conduct and the harm to the opposing party. For example, unanswered requests for admissions are deemed admitted, or pleadings may be stricken. In this instance the manner in which the Court may address the false interrogatories is limited because plaintiff has been successful. However, this Court cannot tolerate wilful misconduct during the course of litigation or trial. This Court finds that the conduct of defense counsel and the debtors was wilful.[3] The goal of the rules dealing with sanctions is accountability. *Syntex Pharmaceuticals*, at 6. Sanctions should be imposed as "an invaluable penalty and deterrent to be employed ... to thwart discovery abuse." *First American State Bank v. Continental Insurance Company*, 897 F.2d 319, 331 (8th Cir.1990). Application of the objective, reasonable standard in determining whether conduct complies with the spirit of the Federal Rules of Civil Procedure, *Syntex Pharmaceuticals*, at 6, mandates imposition of sanctions in this case.

■ Counsel for Plaintiff, Jeffrey Hance, was directed to appear and submit to the Court any proof of damages related to the incorrect interrogatories. Ms. Hance appeared and presented evidence of

---

**3.** Sanctions may be imposed upon the individual defendants. "It is of no consequence that the discovery abuse perpetrated was by counsel rather than the [client]. A litigant chooses counsel at his peril. Counsel's disregard of his professional responsibilities can lead to extinction of his client's claims." *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir.1992).

her time spent relating to the interrogatories, the follow-up procedures necessitated by incomplete answers, supplemental answers and the time associated with the changing answers. Hance specifically testified, as the Court has previously recognized in its memorandum opinion, that she was totally dependent upon the discovery because the non-adversarial fact witness had died. The evidence presented by Hance, which the Court finds to be completely truthful and which sets forth time and expenditures related to the discovery abuse. Hance charges $80 per hour, an extremely reasonable fee. Her evidence demonstrated that $408 of her billing time related to the discovery abuse.

The Court takes judicial notice of the fact that Hance was required to attend the hearing at the Court's direction, had no other matters on the October 27, 1992, bankruptcy docket, and was required to travel a distance of 148 miles from her office to the hearing at the Courthouse located in. Jonesboro, Arkansas.[4] The Court deems it appropriate that she also be compensated for her time in traveling to the Courthouse, waiting for the hearing, and attending the hearing, at her usual hourly rate.[5] An additional $400 will be allowed for time related to the hearing. This consists of three hours travel time and two hours of court time at the rate of $80 per hour. Based upon the foregoing, it is

**ORDERED** that sanctions are imposed for discovery abuse upon counsel for debtors, Loyd Harper, and upon the debtors, Kathleen McMillon Narciso and Albert Narciso, jointly and severally, in the amount of $808.00, in favor of Gary Eckel and Jeffrey Hance. It is

**FURTHER ORDERED** that Loyd Harper shall provide for payment of the amount ordered within sixty (60) days of entry of this Order. Loyd Harper shall file a certificate of compliance with this Order within sixty (60) days of entry of this Order.

**IT IS SO ORDERED.**

---

4. The Arkansas highway map indicates that the distance from Batesville to Jonesboro, Arkansas is 74 miles.

5. This matter was called last on the docket due, in part, to concerns expressed to the U.S. Marshal's Office by persons associated with this case. Based upon certain security and professional concerns, the matter was called last so that the courtroom would not be crowded. The docket was scheduled to begin at 10:00 a.m.; the Narciso matter was called at 11:45 a.m.