In re Gary and Pamela
PRICE, Debtors.

Gary L. Price and Pamela
J. Price, Plaintiffs,

v.

America's Servicing Company,
Defendant.

Bankruptcy No. 3:06–BK–15813.
Adversary No. 3:07–ap–01184.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

March 20, 2009.

Joel G. Hargis, Crawley & DeLoache, PLLC, Jonesboro, AR, for Plaintiffs.

Frederick S. Wetzel, Frederick S. Wetzel, P.A., Little Rock, AR, Hilary B. Bonial, Joe Manuel Lozano, Brice Legal Group, P.C., Dallas, TX, for Defendant.

### ORDER GRANTING MOTION FOR DEFAULT JUDGMENT IN PART, AND SETTING HEARING ON DAMAGES

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Motion for Default Judgment* filed by the Plaintiffs on July 13, 2007. The Court entered default against Defendant America's Servicing Company ("**ASC**") on October 23, 2007, and subsequently denied ASC's *Motion to Set Aside Default* on May 23, 2008. The Court has reviewed Plaintiff's Complaint to determine if sufficient facts have been pled to justify the entry of default judg-

ment in favor of Plaintiffs.[1] The Court finds that on some counts, sufficient facts were pled to allow the Court to enter default judgment; however, other counts fail to state a claim, and default judgment is denied on those claims. Finally, the Court will schedule a hearing on damages in accordance with FED. R. CIV. P. 55(b)(2)(C), made applicable to bankruptcy proceedings by FED. R. BANKR.P. 7055.

## JURISDICTION

■ Pursuant to 28 U.S.C. § 1334, federal district courts[2] have original and exclusive jurisdiction over all cases under title 11 (*i.e.*, the Bankruptcy Code), and original but not exclusive jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." Plaintiffs in this adversary proceeding allege causes of action arising under the Bankruptcy Code (*i.e.*, § 506(b), § 362, and Federal Rule of Bankruptcy Procedure 2016), under Federal law (*i.e.*, Fair Debt Collection Practices Act and Real Estate Settlement Procedure Act), and under State law (*i.e.*, breach of contract, including breach of duty of good faith and fair dealing and wrongful foreclosure). The § 506(b), § 362, and Rule 2016 causes of action arise under title 11, and accord-

ingly, the Court undoubtedly has jurisdiction over those claims. Further, while none of the Federal or State law causes of action were created by or based on a provision of the Bankruptcy Code, thereby "arising under" title 11, and none of those causes of action are dependent on the bankruptcy case's existence, thereby "arising in" a case under title 11, the Court has at the very least "related to" jurisdiction over the causes of action alleged in the Complaint because the outcome of the Plaintiffs' causes of action could conceivably affect the administration of the Debtors' chapter 13 bankruptcy estate in that any monetary recovery by Debtors before their case is closed, dismissed or converted may constitute property of their bankruptcy estate pursuant to 11 U.S.C. § 1306(a)(1). *See In re Grubbs Const. Co.*, 305 B.R. 476, 480 (Bankr.W.D.Ark.2003); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir.1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original)); *see also Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773–774 (8th Cir.1995).[3]

■ Once the Court's jurisdiction is established, the Court determines whether a

---

1. *See Miller v. Kasden (In re Kasden)*, 209 B.R. 236, 238–239 (8th Cir. BAP 1997) (holding that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment").

2. Proceedings under the Bankruptcy Code may be automatically referred to the bankruptcy judges for the district by the district court. 28 U.S.C. § 157(a). The Eastern District of Arkansas provides for automatic referral of such proceedings by Local Rule 83.1.

3. *See also In re Holmes*, 387 B.R. 591, 599 (Bankr.D.Minn.2008) ("The courts have articulated a test that turns on 'whether the outcome of that proceeding could conceivably have any effect on the estate being adminis-

tered in bankruptcy.' *Celotex Corp. v. Edwards*, 514 U.S. at 308, 115 S.Ct. 1493. This reflects the congressional intention, for a jurisdictional grant of some breadth, *In re Farmland Industs., Inc.*, 378 B.R. at 833, which enables the bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984). Put another way, an action is related to a bankruptcy case 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' ").

civil proceeding is categorized as either a core proceeding or a non-core proceeding.

> In all cases under Title 11 and all core proceedings arising under Title 11, the bankruptcy court may enter appropriate orders and judgments, subject to district court review. 28 U.S.C. § 157(b)(1). Bankruptcy judges may also hear non-core proceedings otherwise related to a case under Title 11, but in such cases the district court shall enter any final order or judgment unless all parties to the proceeding consent to the case's reference to a bankruptcy judge for determination and entry of appropriate orders and judgments.

*Rosen–Novak Auto Co. v. Honz,* 783 F.2d 739, 742 (8th Cir.1986). *See also* 28 U.S.C. § 157(c); Local Rule 83.1(b) of the United States District Court for the Eastern District of Arkansas. Core proceedings "arise under" or "arise in" a bankruptcy case; non-core proceedings are merely "related to" the bankruptcy case. 28 U.S.C. § 157(b)-(c). *See also Specialty Mills, Inc.,* 51 F.3d at 773–774. The Plaintiffs' causes of action under § 506(b), Rule 2016, and § 362 all arise under the Bankruptcy Code and are therefore core matters in which this Court may enter final orders. Further, it is not necessary to analyze whether the Plaintiff's Federal and State law causes of action would be considered core proceedings [4] because ASC, in its post-default conduct, has given its implied consent to this Court exercising core jurisdiction over the Federal and State law causes of action. In the Answer that ASC attempted to belatedly file, ASC admitted Plaintiffs' assertion that the matter was primarily a core proceeding, and raised no objection to the Court's entry of a final order if the case were determined to be a non-core proceeding. Further, in ASC's *Motion to Set Aside Default,* ASC did not raise any challenge to the Court's jurisdiction or to its making a final determination in the case. Based on ASC's failure to challenge Plaintiffs' assertion that its lawsuit is a core proceeding, the Court finds that ASC has by implication consented to have this Court enter a final judgment in this matter. *See In re OCA, Inc.,* 551 F.3d 359, 368 (5th Cir.2008) ("Failure to object in the bankruptcy court may constitute implied consent.... When [Defendant] sought to set aside the default judgment in the bankruptcy court, he never once raised the core/non-core issue, and even filed an answer admitting to the complaint's allegation that '[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).' ") (internal citations omitted).[5]

---

**4.** These causes of action may also be considered core proceedings if sufficiently related to the allowance or disallowance of the proof of claim filed by ASC in Plaintiffs' bankruptcy case. *See In re SRC Holding Corp.,* 352 B.R. 103, 165 (Bankr.D.Minn.2006) ("..., a non-core claim will be considered core if it 'arises out of the same transaction as the creditor's proofs of claim ... or ... [its] adjudication ... would require consideration of issues raised by the proofs of claim ... such that the two claims are logically related,' ...") (internal citations omitted) (*reversed on other grounds, Leonard v. Dorsey & Whitney, LLP,* 553 F.3d 609 (8th Cir.2009)); *In re Iridium Operating LLC,* 285 B.R. 822, 831 (S.D.N.Y. 2002) ("An adversary proceeding against a creditor who has filed a proof of claim against the estate is core because under § 157(b)(2)(B) the adversary proceeding would affect the allowance or disallowance of the creditor's claim.... In addition, claims in an adversary proceeding are tantamount to counterclaims against a creditor who filed a claim against the estate under § 157(b)(2)(c).") (internal citations omitted). *See also Lewallen v. Green Tree Servicing, L.L.C.,* 343 B.R. 225 (W.D.Mo.2006) (finding claims in adversary proceeding were core proceedings where creditor or its agents filed proof of claim).

**5.** *See also Abramowitz v. Palmer,* 999 F.2d 1274, 1277 (8th Cir.1993) (Court found that it had the parties' implied consent to enter a final order under § 157(c)(2)); *In re Kondora,*

## SUMMARY OF FACTS

The Prices' home, valued at $110,000, is encumbered with a mortgage serviced by ASC. The Prices allege that in their mortgage documents, they elected not to have an escrow account, and instead, to pay the hazard insurance and taxes themselves. The Prices aver that despite this election, ASC diverted their pre-petition monthly mortgage payments to an escrow account and paid the hazard insurance on the Prices' mortgage. Additionally, in April 2006, the interest rate on the Prices' mortgage increased from 7.6% to 10.6%, but the Prices allege that they received no notice regarding the interest rate change or change in their payment amount despite a provision in their Note requiring such notice. The Prices allege they made every mortgage payment in full prior to September 2006, but were informed that their home was in foreclosure in October 2006.

On December 18, 2006, the Prices filed a chapter 13 bankruptcy petition and their initial Chapter 13 plan [6] which provided for a regular monthly mortgage payment to ASC in the amount of $977.07, and a monthly payment of $97.71 to cure an arrearage of $5,862.42.[7] ASC filed a proof of claim on January 31, 2007, and the Prices contend that the proof of claim includes questionable and improper fees and costs, and fails to credit some of the mortgage payments they in fact made. On February 2, 2007, ASC filed an Objection to Confirmation of Plan asserting a pre-petition arrearage of $10,411.02, and monthly payments due of $1,210.71. The Prices filed a response and then an amended response on February 22, 2007, and the matter was set for hearing. The Prices' schedules filed on March 21, 2007, listed the debt owed to ASC as $101,000 on Schedule A, and $97,000 on Schedule D, secured by their residence valued at $110,000.

In February 2007, the Prices sent a Qualified Written Request ("**QWR**") to ASC. The Prices requested ASC's mortgage pooling and servicing agreement, and all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements for the Prices mortgage. ASC allegedly responded with a statement that any documents not provided were privileged information.

The Prices filed this adversary proceeding June 12, 2007. At that time, the scheduled hearing on ASC's objection to confirmation was continued until an indefinite date to be held with the trial in this adversary proceeding. ASC did not timely answer, and the Prices moved for entry of a default judgment. The Court held a hearing on the Prices' motion on July 15, 2007, and took the matter under advisement. ASC then filed a belated Answer,

---

194 B.R. 202 (Bankr.N.D.Iowa 1996) (Court found implied consent to its entry of a final order where parties stipulated that the proceedings were core). *But see In re BN1 Telecommunications, Inc.,* 246 B.R. 845 (6th Cir. BAP 2000) (Court did not find adequate evidence of consent where *pro se* litigant's initial answer denied jurisdiction generally but later pleading filed by counsel following entry of default-based judgment admitted to paragraph in complaint regarding core nature of the proceeding).

**6.** The Court takes judicial notice of all documents filed in the current case. *See* Fed. R.Evid. 201; *In re Henderson,* 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny,* 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

**7.** The Prices do not explain where the $5,862.42 arrearage comes from given that they also allege they were current on their payments. Future modifications to their plan do not alter ASC's treatment.

which the Prices moved to strike. The Court entered default against ASC on October 23, 2007. ASC moved to set aside the Court's entry of default, and following a hearing held on December 6, 2007, the Court denied ASC's motion to set aside the default in a Memorandum Opinion entered on May 23, 2008.

In the Prices' case-in-chief, the Trustee has an Objection to Confirmation pending, which was filed December 22, 2008, raising an objection based on the means test and the payment to general unsecured creditors, and also asserting that the plan will not be sufficiently funded. On December 16, 2008, the Prices filed a *Motion to Stay Proceedings Pending Final Adjudication* (**"Motion to Stay"**) in which they seek to stay all proceedings in their bankruptcy case pending the Court's decision regarding default judgment in this adversary proceeding. In support, the Prices allege that the Court's final determination of this adversary proceeding may have an affect on the administration and/or feasibility of their bankruptcy case. No objections to the Motion to Stay were filed, and an Order granting the Motion to Stay was entered February 10, 2009. Accordingly, the objections to confirmation have not been resolved, and the Prices' plan remains unconfirmed.

## FACTS

The Court takes as true those facts pled by the Plaintiffs in their Complaint, which are set forth verbatim below. (To the extent Plaintiffs cite law in their facts, the Court does not accept those statements as facts).

1. The Plaintiff's Chapter 13 case was commenced by the filing of a voluntary petition with the Clerk of this Court on December 18, 2006.

2. Plaintiffs owe a disputed amount to an unknown holder of a loan secured by a mortgage on their residential real estate. To the best of their knowledge, *information and belief*, said loan is serviced by ASC.

3. Plaintiffs believe that the true holder and owner of their mortgage note is an unknown securitized trust with U.S. Bank National Association serving as trustee.

4. The loan is secured by a mortgage on real property which serves as the Plaintiffs' principal residence, denoted by a mailing address of 613 Sumack, Trumann, AR 72472 (hereinafter referred to as "their home"). Plaintiffs estimate that the fair market value of their home is $110,000.00.

5. Prior to the bankruptcy filing, the Plaintiffs mortgage was placed in foreclosure status.

6. Prior to the bankruptcy filing, ASC charged Plaintiffs' account for forced placed insurance in the amount of $1195.00 on at least one occasion, in spite of the fact that Plaintiffs have always held appropriate and contractually required insurance on the property and in spite of the fact that the said coverage has never lapsed. [Plaintiffs incorporate by reference Exhibits "A1," "A2," and "A3," copies of their Homeowner Policy Declarations with effective dates from April 25, 2004, through April 25, 2007.]

7. Additionally, Plaintiffs' elected, pursuant to their mortgage documents, to pay hazard insurance and property taxes directly and did not create an escrow account to pay said expenses through their mortgage servicer.

8. ASC filed a sworn Proof of Claim on or about January 31, 2007. The Proof of Claim as filed with the Court asserts an arrearage of $10,411.02. The Proof of Claim's supporting documentation identifies the following questionable fees and

costs which have been charged to the Plaintiffs' account:

- Regular monthly installments May 20, 2006, through December 18, 2006 [petition filing date] — $8,043.81
- Late Charges — $ 320.41
- Pre-petition Attorney fees and Costs — $1,861.80
- Other pre-petition fees, expenses and charges as reflected in 1A above [Inspection fees, Appraisal fees, SF Check Charges, and Other Charges] — $ 185.00

9. The sworn Proof of Claim fails to credit to the Plaintiffs' account the sum of $2796.08 in continuing monthly mortgage payments made between the months of May 2006 and August 2006.

10. According to a transaction history provided to Plaintiffs' attorney, Defendant charged $905.80 in pre-petition attorney's fees and costs against the Plaintiffs' mortgage account on January 11, 2007; nearly one month after this present case was filed. Furthermore, according [to] the transaction history, no other pre-petition attorney's fees were charged against the Plaintiffs' mortgage account before this case was filed.

11. Additionally and specifically, said transaction history indicates that the pre-petition attorney's fees were charged to a corporate suspense account which includes such other fees as bankruptcy attorney fees/costs totaling $474.04 and property inspection fees charged to the account post petition.

12. Plaintiffs aver, upon information and belief, that the $1861.80 listed in ASC's proof of claim is, in fact, the corporate suspense account listed on the transaction history and includes post petition attorneys' fees and costs and various other legacy fees.

13. Rule 2016(a) of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

14. Plaintiffs aver, upon information and belief, that ASC is attempting by fraud, deceit and abuse of the bankruptcy process to charge legal fees and expenses to the Plaintiffs that are unlawful, illegal, excessive and otherwise void.

15. The Plaintiffs believe and therefore allege that the actions of ASC in this case constitute an unlawful attempt to collect a debt from the Plaintiffs in violation of the automatic stay and in a manner totally inconsistent with the Chapter 13 Plan and the Federal Rules of Bankruptcy Procedure.

16. Plaintiffs' note contains an adjustable rate provision that provides that the Plaintiffs' interest rate "*may* change on the 20th day of April, 2006, and on that day every sixth month thereafter." [Emphasis added in Plaintiffs' Complaint. Plaintiffs incorporate by reference Exhibit "B," a copy of the adjustable rate note.]

17. Additionally, Section 4(f) of the note requires that the "Note Holder will deliver or mail to [Plaintiffs] a notice of any changes in my interest rate and the amount of my monthly payment before the effect[ive] date of any change."

18. According to a Customer Account Activity Statement provided to Plaintiffs' attorney by the Defendant, the Plaintiffs interest rate increased, in or around April of 2006, from 7.60% to 10.6% and their monthly payment amount increased from $699.02 monthly to $905.21. [Plaintiffs incorporate by reference Exhibit "C," a copy of the Customer Activity Statement].

19. Plaintiffs allege that at no time prior to April of 2006 did Defendant "deliver or mail" or otherwise provide a notice of a change to their interest rate or monthly

payment amount as required by their mortgage note.

20. Plaintiffs continued to make their regular monthly payments to their mortgage account up to the month of October 2006 when they were informed in a telephone conversation with an ASC agent that their home had been placed in foreclosure.

21. The Plaintiffs affirmatively state that prior to September of 2006 they had made every mortgage payment they knew was due under their contract and maintained appropriate and continuous insurance coverage.

22. The Plaintiffs allege that because they maintained continuous insurance coverage and paid their continuing mortgage payments as stated in paragraph [20] above, any fees and charges assessed against their mortgage account including, but not limited to, foreclosure fees and costs, attorneys fees and costs, late charges, inspection fees, appraisal fees, etc. are neither necessary nor appropriate and were assessed in violation of their mortgage agreement.

23. The Plaintiffs allege that even though they have maintained continuing insurance coverage on their home and have budget[ed] for said expense on Schedule J filed with this Court ASC nonetheless issued what is purported to be an Escrow Account Statement in December of 200[6]. [Plaintiffs incorporate by reference Exhibits "D1" and "D2," copies of Escrow Account Statements prepared on December 20, 2006, and December 22, 2006, respectively.]

24. Plaintiffs are informed and believe and therefore allege that ASC diverted their monthly mortgage payments to an escrow account to pay their insurance premiums.

25. The Plaintiffs aver that ASC, upon being informed by the Plaintiffs that they had maintained continuous insurance coverage on their home, retrieved the funds paid on the force placed insurance and placed them in a suspense account.

26. In or around April of 2007, the Plaintiffs attempted to pay their home owners insurance premium for the year beginning on April 2007 through May 2008 but were informed by their insurance agent that ASC had already paid the premiums.

27. On or about February 5, 2007, counsel for the Plaintiffs caused a qualified written request (hereinafter "QWR") to be sent to ASC at P.O. Box 10328, Des Moines, IA 50306, pursuant to the RESPA.

28. Defendant answered Plaintiffs QWR by letter dated February 28, 2007, within the sixty (60) deadline required by RESPA.

29. The QWR requested various documents be presented to Plaintiffs' counsel including, but not limited, to the following: mortgage pooling and servicing agreement, and all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to this account.

30. ASC responded to these requests with a general denial stating that "Any Information you requested that has not been provided, [sic] is privileged ASC information and can not be released."

31. The Plaintiffs believe and therefore allege that the information requested in the QWR has been filed as a public record with the United States Securities and Exchange Commission by ASC and is therefore not privileged and by no standard confidential.

32. Furthermore, the Plaintiffs believe and therefore allege that one or all of the documents requested in the QWR will out-

line, among other things, specific loss mitigation and foreclosure avoidance measures available to the Plaintiffs, including, for example, forbearance and loan modification, principal reductions, interest reductions and interest changes. As such, the Plaintiffs asserts [sic] that they are entitled to a review of these documents as third party beneficiaries.

33. The Plaintiffs have been and continue to be damaged by the Defendants' actions in that they have been and continue to be forced to expend their time and expenses toward the defense of this contested matter and have feared losing their residential rental [sic] property.

34. The Plaintiffs seek a Declaratory Judgment on the facts of this case and request the Court to enjoin the Defendant from engaging in the conduct complained of herein, to award damages and legal fees to the Plaintiff, including punitive damages, and for such other and further relief as the Court may seem just and proper.

35. The Plaintiffs reserve the right, subject to Court approval, to amend these pleadings, add other allegations, and move for damages.

## LEGAL STANDARD

■ "Entry of a default judgment under Rule 55 Fed.R.Civ.P. (made applicable to adversary proceedings by Rule 55 Fed. R.Civ.P.) while committed to the sound discretion of the trial court is not favored by the courts and should be entered only in extreme cases." *Id.* (citing *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993); *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir.1977)).

'Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be relitigated on appeal. However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment.'

*Miller v. Kasden (In re Kasden)*, 209 B.R. 236, 238 (8th Cir. BAP 1997) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). *See also Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir.2004) (citing *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n. 7 (8th Cir.1988)).[8] Furthermore, " '... the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.' " *Quinn v. Ocwen Federal Bank, FSB*, 470 F.3d 1240, 1244 (8th Cir.2006) (quoting *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir.2002)). Finally, although facts alleged in the complaint are taken as true, "[i]f the damages claim is indefinite or uncertain, the amount of damages must be proved in a supplemental hearing or proceeding to a reasonable degree of certainty." *CitiMortgage, Inc. v. Paragon Home Lending, LLC*, 2008 WL 4488952, *2 (E.D.Mo.2008) (citing *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir.2001)).

■ When default judgment is granted, it must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Federal Rule of Bankruptcy Procedure 7054(c).

## DISCUSSION

### Claims 1 & 2—11 U.S.C. § 506 and Rule 2016

■ Section 506(b) allows oversecured creditors with allowed claims to charge

---

8. Pursuant to Federal Rule of Bankruptcy Procedure 7010 which incorporates Federal Rule of Civil Procedure 10(c), written instruments attached to the complaint as exhibits become part of the complaint for all purposes.

interest and reasonable fees, costs, or charges provided for under the agreement between the parties. 11 U.S.C. § 506(b). "The burden to show that the charges are reasonable is on the party seeking to impose charges." *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr.S.D.Tex.2007) (citations omitted). Federal Rule of Bankruptcy Procedure 2016(a) provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

The Prices allege violations of § 506(b) and Rule 2016 in that ASC charged fees which were not approved by the Court. The Prices also allege that the underlying mortgage agreement does not provide for any such fees, and that the fees and costs are otherwise unreasonable and excessive. Specifically, the Prices object to $1,861.80

listed as pre-petition fees and costs (of which they believe only $905.80 represent pre-petition fees that were recorded post-petition),[9] $320.41 in late charges, and $185 in other pre-petition fees, expenses and charges. The Prices also claim that ASC's Proof of Claim failed to credit their account the sum of $2,796.08 in regular monthly mortgage payments made between May 2006 and August 2006. For the reasons explained below, the Court finds that default judgment is not appropriate on the Prices' § 506(b) and Rule 2016 claims. However, because the allegations in the Prices' Complaint are taken as true, the Court finds that neither the mortgage nor the note provided for such fees and the fees are therefore unreasonable. Since the Prices also seek disallowance of ASC's claim in their Complaint,[10] ASC's Proof of Claim will be reduced by this amount. Further, ASC's claim will be reduced by the $2,796.08 in regular monthly mortgage payments the Prices allege they made but ASC did not record.

9. The Court also notes, without deciding, that it may be permissible to include expenses incurred post-petition as a part of a creditor's pre-petition claim. *See* John Rao, Fresh Look at Curing Mortgage Defaults in Ch. 13, American Bankruptcy Institute Journal, February 2008, 27–FEB Am. Bankr.Inst. J. 14, 63 (noting that it is widely accepted that a creditor may include post-petition, pre-confirmation fees "in a proof-of-claim without filing a Rule 2016 application if the claim is sufficiently detailed and provides adequate notice to the debtor.") (citations omitted); *In re Atwood*, 293 B.R. 227, 232 (9th Cir. BAP 2003) ("Because § 506(b)'s applicability is limited to expenses 'provided for under the agreement under which such claim arose,' those expenses are inherently part of the pre-petition claim, although contingent and although the services may have been rendered post-petition." (internal citations omitted)); *In re Ransom*, 361 B.R. 895, 902 (Bankr.D.Mont.2007) (acknowledging that a creditor may be able to disclose all post-petition fees and costs in a proof of claim to the date of the filing the proof of claim, but clarifying that a fee application for

post-petition fees and costs may more adequately provide all necessary information so the Court can independently determine the reasonableness of the fees and costs); *In re Madison*, 337 B.R. 99, 103–104 (Bankr. N.D.Miss.2006) ("This court finds that the disclosure of attorney fees, costs and other charges claimed by a creditor may be made in most routine circumstances through the filing of a proof of claim."); *In re Manus*, 324 B.R. 85, 87 (Bankr.W.D.Ark.2005) ("If a fee or expense claimed by a creditor is based on the creditor's right to collect the fees under the respective pre-petition mortgage or deed of trust, the right to payment would be part of a pre-petition claim, even though the fees and charges were not incurred until after the debtor filed his respective bankruptcy petition.").

10. *See* Fed. Rule Bankr.Proc. 3007(b) which provides, "A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

With respect to claims under § 506(b) and Rule 2016, courts disagree over several issues, including whether a creditor is even required to file a Rule 2016 application to recover fees under § 506(b), whether there is a private right of action under § 506(b) and Rule 2016, and whether a court can use its equitable powers under § 105(a) to fashion a remedy for violations of § 506(b) and Rule 2016. Courts do agree that where relief is warranted, the appropriate remedy is disgorgement of fees improperly collected.

■ First, courts disagree as to whether a mortgage creditor must seek court approval or file a Rule 2016 application before assessing fees provided for in a mortgage document.[11] The *Sanchez* court concluded that the mortgage creditor's failure to disclose post-petition pre-confirmation charges to the debtors, and its failure to file a Rule 2016 application for such charges, rendered those charges unreasonable per se. 372 B.R. at 304. On the other hand, the court in *Padilla v. GMAC Mortgage Corp. (In re Padilla)* found that a secured creditor was not required to provide a debtor with notice of post-petition legal expenses chargeable to the debtor under the mortgage agreement. 389 B.R. 409 (Bankr.E.D.Pa.2008). However, for purposes of this case, the Court need not decide whether court approval or a Rule 2016 application is necessary because even those courts that require court approval agree that disgorgement of fees improperly collected is the appropriate remedy, and disgorgement is not an available remedy in this case.

A second issue that courts have disputed is whether there is a private right of action for violations of 506(b) or Rule 2016. While some courts have found that there is no private right of action under § 506(b)

---

**11.** For an in-depth analysis of cases on both sides of this argument, see *Padilla v. GMAC Mortgage Corp. (In re Padilla)*, 389 B.R. 409 (Bankr.E.D.Pa.2008). Additionally, cases finding that creditors are not required to seek prior approval include: *In re Booth*, 399 B.R. 316 (Bankr.W.D.Ark.2009) (finding that "in the absence of local rules or court-sanctioned Chapter 13 form plans that provide otherwise, there is no requirement that creditors seek approval of their attorney's fees pursuant to Federal Rule of Bankruptcy Procedure 2016.") (citing *In re Collins*, 2007 WL 2116416 at *16 (Bankr.E.D.Tenn. July 19, 2007); *In re Aldrich*, 2008 WL 4185989, at *3 (Bankr.N.D.Iowa Sept.4, 2008); *In re Hudak*, 2008 WL 4850196, at *7 (Bankr.D.Colo. Oct.24, 2008)); *In re Alanis*, 316 B.R. 323, 325 (Bankr.W.D.Ark.2004) (holding that there is no requirement in the bankruptcy code or rules that a creditor must obtain prior approval of its post-petition fees before including those fees in its proof of claim, but acknowledging that the fees are subject to review for reasonableness under § 506(b)); *In re Manus*, 324 B.R. 85, (Bankr.W.D.Ark. 2005) (same).

For cases finding that prior approval of such fees is required pursuant to Rule 2016, see *Sanchez*, 372 B.R. at 304 (Court acknowledged that the anti-modification clause of § 1322(b)(2) applied in that case because the mortgage creditor's claim was secured only by the debtors' principal residence, but rejected the argument that § 1322(b)(2) rendered § 506(b) and Rule 2016 ineffectual.); and *Payne v. Mortgage Electronic Registration Systems, Inc. (In re Payne)*, 387 B.R. 614, 631 (Bankr.D.Kan.2008) ("Rule 2016 does not conflict with § 1322(b)(2) because Rule 2016 does not deny lenders the ability to assess and collect post-petition contractual fees. Rather, Rule 2016 requires the lender to disclose the charges and receive court approval."). *See also Wells Fargo Bank v. Jones*, 391 B.R. 577 (E.D.La.2008) (affirming in part and reversing in part *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584 (Bankr. E.D.La.2007)); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr.S.D.Tex.2008); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 667–668 (Bankr.S.D.Tex.2007); *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 667–669 (Bankr. W.D.N.C.2000).

or Rule 2016, and that § 105(a) cannot be used to create such a right, *see e.g., In re Joubert,* 411 F.3d 452 (3rd Cir.2005), others have declined to reach the issue finding that disgorgement is an appropriate remedy whether there is a private right of action or not. For instance, the *Sanchez* court did not address whether the debtors in that case could maintain a private right of action under § 506 and Rule 2016, but concluded that the Court could use its equitable powers under § 105(a) to enforce the provisions of § 506 and Rule 2016. 372 B.R. at 309–310 ("[A] bankruptcy court is well within its authority if it exercises its equitable powers under § 105(a) to achieve a result the Code clearly requires.") (citing *Perkins Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478–479 (5th Cir.1994)).[12] The *Sanchez* court ordered disgorgement of monies improperly collected from the debtors' estate as a sanction against the mortgage creditor for its failure to comply with § 506(b) and Rule 2016. *Id.* at 312. Other courts relying on § 105 to rectify violations of § 506(b) and Rule 2016 have similarly limited the relief granted to disgorgement or restitution of fees improperly awarded. *See e.g., Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez),* 396 B.R. 436 (Bankr.S.D.Tex.2008); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla),* 379 B.R. 643, 667–668 (Bankr. S.D.Tex.2007); *Tate v. NationsBanc Mortgage Corp. (In re Tate),* 253 B.R. 653, 667–669 (Bankr.W.D.N.C.2000). In *Padilla v. Wells Fargo,* the bankruptcy court acknowledged that it could not use § 105 to create a substantive right not found in the Code, or to contravene existing Code provisions, but held that, "ordering disgorge-

ment of monies collected in violation of a Bankruptcy Rule, § 506(b), or a confirmed Chapter 13 plan is a necessary action to enforce and implement court orders and rules." 379 B.R. at 667. The *Padilla v. Wells Fargo* court goes on to note, however, that the court cannot order disgorgement if no improper fees were actually collected. *Id.*

In this case, ASC included attorneys' fees and other charges on its proof of claim, but there is no allegation ASC has been paid for any of these charges. Accordingly, the Court cannot order disgorgement or restitution because these fees have not actually been paid. However, as the Prices also seek disallowance of ASC's claim in their Complaint, the Court hereby disallows that portion of ASC's claim seeking payment for $2,367.21 in fees and charges which the Prices have alleged were not provided for by the mortgage and note. Further, ASC's claim shall be reduced by $2,796.08 to account for the May 2006 through August 2006 payments that the Prices allege they made but ASC did not record.

### Claim 4—Automatic Stay

■ The Prices also claim ASC violated the automatic stay by charging post-petition fees, including attorney's fees, to their mortgage account. In support, the Prices allege that ASC charged $905.80 in prepetition attorney's fees and costs against the Prices' mortgage account on January 11, 2007, nearly a month after the Prices filed bankruptcy, according to a transaction history provided by ASC (Plaintiffs' Exhibit C). The history states that these charges were "Corporate Fees Assessed or Recovered" and shows a corresponding in-

---

**12.** *See also Myles v. Wells Fargo Bank (In re Myles),* 395 B.R. 599, 609 (Bankr.M.D.La. 2008) ("A bankruptcy court does indeed have the authority under 11 U.S.C. § 105 to order creditors to disgorge moneys improperly ob-

tained from debtors. However, that is not the same as recognizing a debtor's private right of action for damages under a specific Bankruptcy Code section.") (citing *Sanchez* ).

crease in the "Corporate Fees Balance" column. The history also shows three $15 property inspection fees and $474.04 for "bankruptcy attorney fees/costs" charged to the corporate fees balance. The Prices allege that ASC included this corporate suspense account in its original Proof of Claim filed on or about January 31, 2007. The Prices further assert that ASC's practice of holding funds paid by the Prices as monthly mortgage payments in suspense and then using those funds, or a portion of those funds, to pay the Prices' non-escrowed insurance premiums constitutes a gross violation of the automatic stay. However, the Prices do not allege post-petition payments were used in this manner. The Court notes that without a confirmed plan or a plan proposing a mortgage payment outside the plan, it is not clear that ASC is receiving post-petition mortgage payments thus far. Due to the lack of allegations regarding post-petition payments to ASC, and for the reasons explained below, the Prices' allegations fail to support a claim for violation of the automatic stay, and accordingly, default judgment may not be granted on this claim.

Section 362(a)(3) provides that a bankruptcy petition acts as an automatic stay applicable to, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property of the estate." 11 U.S.C. § 362(a)(3). In this case, there is no confirmed plan, and the property of the estate is determined by reference to § 1306(a) which provides that property acquired and wages earned post-petition are property of the estate. If regular mortgage payments were applied to late fees or other charges post-petition, the automatic stay was violated as the lender took action "to obtain possession of property of the estate or . . .

to exercise control over property of the estate." § 362(a)(3). *See Payne v. Mortgage Electronic Registration Systems, Inc. (In re Payne),* 387 B.R. 614, 638 (Bankr. D.Kan.2008) ("Actions taken post-petition such as improperly applying trustee payments, refusing to remove disallowed fees, attempting to collect disallowed fees from debtors via a payoff letter, and assessing and collecting post-petition fees without notice to debtors can violate the stay.") (internal citations omitted); *In re Sanchez,* 372 B.R. at 314–315 (finding violation of automatic stay where mortgage creditor unilaterally assessed charges and subsequently paid itself for charges out of chapter 13 plan payments); *Jones v. Wells Fargo Home Mortgage (In re Jones),* 366 B.R. 584, 599–600 (Bankr.E.D.La.2007) (finding that mortgage creditor violated automatic stay by "assessing post-petition charges and diverting estate funds for their satisfaction.") (affirmed in part and reversed in part in *Wells Fargo Bank v. Jones,* 391 B.R. 577 (E.D.La.2008)).[13] *But see Padilla v. Wells Fargo,* 379 B.R. at 664–666 (concluding that misallocation of funds, such as the posting of an item from one internal account to another, "is not an act to obtain possession of estate property" and therefore does not violate the automatic stay).

The cases cited herein all involve both an assessment of post-petition charges and *payment of* those charges, typically by some misallocation of chapter 13 plan payments or regular mortgage payments. Other cases addressing the mere assessment or recording of post-petition charges conclude that the mere assessment or recording of such fees do not violate the automatic stay. *See Mann v. Chase Manhattan Mortg. Corp.,* 316 F.3d 1, 3 (1st Cir.2003); *Padilla v. Wells Fargo,* 379

13. *See also Myles,* 395 B.R. 599 (following *Payne, Sanchez, Jones* ).

B.R. at 664 (citing *Mann*); *Jones*, 366 B.R. at 600, n. 64 (citing *Mann*). Finally, merely filing a proof of claim with charges included has been held not to violate the automatic stay. *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355–356 (5th Cir.2008) (finding that increased mortgage payment asserted in proof of claim did not result in a violation of the automatic stay where creditor did not collect the new amount or take any action outside the bankruptcy proceeding to collect it) (quoting *In re Sammon*, 253 B.R. 672, 681 (Bankr.D.S.C.2000) (" '[T]he automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court. The filing of a Proof of Claim before a bankruptcy court … is the logical equivalent of a request for relief from the automatic stay, which cannot itself constitute a violation of the stay …' ")).

In this case, there is no allegation that ASC has in fact paid itself or been paid the charges it lists on the transaction history and its proof of claim out of estate property. The Prices have simply not alleged that these fees have in fact been paid, and accordingly, they have not pled sufficient allegations to support a claim for violation of the automatic stay. Further, although the Prices allege that ASC is holding funds paid by them as monthly mortgage payments in suspense and then using those funds, or a portion of those funds, to pay the Prices' non-escrowed insurance premiums, the Prices do not allege that this practice has continued beyond the petition filing date. Had they done so, this Court may find a violation of the automatic stay, but without any allegations regarding whether any payments have even been made to ASC post-petition, there are insufficient facts upon which the Court can enter default judgment in favor of the Prices on this claim. The Prices have adequately stated other claims against ASC based on its collection and misapplication of payments pre-petition (see discussion of claims six and seven below), but without some alleged collection, allocation or payment *post-petition*, the Court cannot find that the holding of funds in suspense at the time ASC filed its proof of claim violates the automatic stay.

### *Claim 3—Fair Debt Collection Practices Act*

The Prices allege violations of §§ 1692d, 1692e, and 1692f of the Fair Debt Collection Practices Act ("**FDCPA**") in that ASC has demanded an amount that is inaccurate and inflated, and in violation of the parties' contract.[14] The Prices allege that ASC is subject to FDCPA as the servicer of their mortgage but not the true owner of the note.

■ A threshold issue is whether ASC is a debt collector within the meaning of the FDCPA. "It is well-settled that provisions of the FDCPA generally apply only to debt collectors," *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va.2003) (citing *Pollice v. National Tax Funding, L.P.* 225 F.3d 379 (3d Cir.2000)) but not creditors. *Id.* (citing

---

**14.** The Court notes that while some courts have held that the Bankruptcy Code precludes claims under the FDCPA, *see Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504 (9th Cir.2002), this Court finds persuasive the reasoning of the Seventh Circuit in *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir.2004), that there is no "irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other." *See also In re Figard*, 382 B.R. 695 (Bankr. W.D.Pa.2008); *In re Payne*, 387 B.R. 614, 631 (Bankr.D.Kan.2008); *Burkhalter v. Lindquist & Trudeau, Inc.*, No. 4:04CV1803–DJS, 2005 WL 1983809, at *1 (E.D.Mo. Aug.16, 2005); *Drnavich v. Cavalry Portfolio Service, LLC*, No. Civ. 05–1022 PAMRLE, 2005 WL 2406030 (D.Minn.2005).

*Perry v. Stewart Title Co.,* 756 F.2d 1197 (5th Cir.1985), *modified on other grounds,* 761 F.2d 237 (5th Cir.1985)) (holding that a debt collector does not include creditors, mortgage servicing companies, or assignees of debt, provided the debt was not in default when it was assigned). *See also Schmitt v. FMA Alliance,* 398 F.3d 995 (8th Cir.2005) (" 'A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all.' ") (quoting *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir.2004)); *Montgomery v. Huntington Bank,* 346 F.3d 693, 699 (6th Cir.2003) (". . . the federal courts are in agreement: A bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.' ") (quoting *Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 794 (W.D.Ky.2003)).

A "creditor," for purposes of the FDCPA, is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition of "debt collector" excludes: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person; . . ." 15 U.S.C. § 1692a(6)(F)(iii). Based on this exception to the definition of debt collector, it has been consistently held that the FDCPA's restrictions do not apply to mortgage servicing companies unless "the mortgage at issue was already in default at the time when servicing began." *Dawson v. Dovenmuehle Mortgage, Inc.,* 2002 WL 501499, *5 (E.D.Pa.2002) (citing *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985)). *See also Ricotta v. Ocwen Loan Servicing, LLC,* 2008 WL 516674, *6 (D.Colo.2008) ("[The § 1692a(6)(F)(iii) ] exception is apparently intended to exempt from the FDCPA's requirements persons who acquire a debt for reasons other than for delinquency-based debt-collection purposes."); *Quinn v. Ocwen Federal Bank, FSB,* 2006 WL 4495659 (E.D.Ark.2006) *aff'd,* 470 F.3d 1240 (8th Cir.2006) (Court found that FDCPA did not apply to servicer where mortgage was not in default at the time servicer began servicing the mortgage.); *Zlupko v. Washington Mut. Bank,* 2004 WL 2297400, n. 2 (E.D.Pa. 2004) ("Mortgage lenders and servicers . . . are generally exempt from the FDCPA.").

█ In this case, there is no allegation that the mortgage was transferred to ASC for servicing while the Prices were in default. In fact, the Prices allege that "prior to September 2006 they had made every mortgage payment they knew was due under their contract . . .". (Plaintiffs' Complaint ¶ 31). Taking all allegations as true, the Prices were not in default at the time ASC began servicing their loan. Accordingly, ASC is not a "debt collector" within the meaning of FDCPA, and default judgment on the FDCPA claim is denied.

### Claim 5—RESPA, 12 U.S.C. § 2605(e)(2)(C)(i)

█ The Prices also assert a claim under RESPA, alleging that ASC provided false statements in response to a Qualified Written Request (**"QWR"**) sent to ASC by the Prices in violation of § 2605(e)(2)(C)(i).

The Prices do not identify which false statements they are referring to in their claim for relief under RESPA, but state the following facts regarding their QWR and ASC's response in their Complaint. The Prices acknowledge that ASC timely responded to their QWR which requested various documents including: mortgage pooling and servicing agreements, and all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to their account. The Prices aver that ASC responded to their QWR by simply stating that "[a]ny information you requested that has not been provided, is privileged ASC information, and cannot be released." The Prices allege that the information requested is of public record, and filed with the Securities and Exchange Commission, and is therefore neither privileged nor confidential. The Prices further allege that one or all of the documents requested will outline specific loss mitigation and foreclosure avoidance measures available to them, including forbearance and loan modification, principal reductions, interest reductions and interest changes. The Prices claim they have been and continue to be damaged by ASC's "actions in that they have been and continue to be forced to expend their time and expenses toward the defense of this contested matter and have feared losing their residential rental [sic] property."

The provisions of RESPA regulate both the real estate settlement process and the servicing [15] of federally related mortgage loans.[16] 12 U.S.C. §§ 2601–17. The Prices allege that ASC violated § 2605(e)(2)(C)(i) which provides that, following receipt of an inquiry, the servicer shall conduct an investigation and then provide the borrower with the information requested, or an explanation of why the requested information is unavailable or cannot be provided by the servicer. 12 U.S.C. § 2605(e)(2)(C)(i). If a loan servicer violates § 2605(e), § 2605(f) provides for the borrower's remedies which are conditioned upon actual damages to the borrower. Section § 2605(f) provides in pertinent part:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

· · ·

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any

---

**15.** "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). A "servicer" is defined

as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2).

**16.** The definition of a "federally related mortgage loan" is found at 12 U.S.C. § 2602(1) and includes a loan secured by a first or subordinate lien on residential real property made by certain lenders, including any lender insured by or regulated by any agency of the Federal Government. 12 U.S.C. § 2602(1)(A).

attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f). Many courts have held that "a RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." *Ricotta v. Ocwen Loan Servicing, LLC,* 2008 WL 516674, *6. The *Ricotta* court based this conclusion on RESPA's remedy provisions which make no provision for relief other than an award of actual damages. *See also Byrd v. Homecomings Financial Network,* 407 F.Supp.2d 937, 946 (N.D.Ill.2005) (finding that "RESPA, 12 U.S.C.A. § 2605(f) ... requires a party to show actual damage from a violation of § 2605(e)(2) and where plaintiff could not do so she failed to state a claim under RESPA as a matter of law."); *Collier v. Wells Fargo Home Mortgage,* 2006 U.S. Dist. LEXIS 35619, 2006 WL 1464170 (N.D.Tex. May 26, 2006) (holding where plaintiffs alleged no damages caused by failure to respond to qualified written requests, there was no RESPA claim under § 2605(e)); *In re Holland,* 374 B.R. 409, 443 (Bankr.D.Mass.2007) (holding that debtor could amend her complaint to plead the existence of actual damages and a causal link between the servicer's failure to provide information and those damages).

Taking the allegations in the Prices' Complaint as true, the documents requested were not in fact confidential or privileged, and ASC did not provide the Prices with an adequate explanation why they could not be produced. Further, the Prices allege they have expended time and expenses and feared losing their home as a result of ASC's failure to produce the documents in question. Accordingly, to the extent a plaintiff must plead, as an element of a RESPA claim, actual damages as a result of the alleged RESPA violation, the

Court finds the Prices have adequately pled actual damages. *See Johnstone v. Bank of America, N.A.,* 173 F.Supp.2d 809, 816 (N.D.Ill.2001) (following another court which held that "actual damages under RESPA 'encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence.'") (quoting *Cortez v. Keystone Bank, Inc.,* 2000 WL 536666, *12 (E.D.Pa.2000)).

Accordingly, the Court finds that the Prices have stated a claim under RESPA for ASC's failure to explain why it could not produce certain documents, and will schedule a hearing to determine the amount of Plaintiffs' damages.

### Claim 6—Breach of Contract and Breach of the Duty of Good Faith and Faith Dealing

The Prices next allege a breach of contract and a breach of the duty of good faith and fair dealing in that ASC misapplied their regular mortgage payments to pay for homeowners' hazard insurance premiums that the Prices had opted out of in their mortgage agreement. The Prices also allege that ASC breached the contract by imposing or collecting amounts that were not authorized by the contract including interest on the force-placed insurance premiums, default-related fees, costs and charges.

 "When performance of a duty under a contract is due, any non-performance is a breach." *Restatement (Second) of Contracts* § 235(2) (1981). *See Aon Risk Services, Inc. v. Meadors,* 100 Ark. App. 272, 285, 267 S.W.3d 603, 612 (Ark. App.2007). Taking the Prices' allegations as true, together with the proof submitted with their Complaint showing that they

had in fact paid their homeowners' insurance premiums for the period in question, and that the Customer Activity Statement and Escrow Account Statements prepared by ASC show that ASC also paid the Prices' homeowners' insurance premiums, the Prices have set forth a claim for breach of contract.

■■■■ With respect to the breach of the duty of good faith and fair dealing, Arkansas has adopted the view of the Restatement (Second) of Contracts § 205 and stated "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Aon Risk Services, Inc. v. Meadors,* 100 Ark.App. 272, 285, 267 S.W.3d 603, 613 (2007) (quoting *Cantrell–Waind & Assoc., Inc. v. Guillaume Motorsports, Inc.,* 62 Ark.App. 66, 968 S.W.2d 72 (1998)). However, in *Preston v. Stoops,* the Arkansas Supreme Court held that although every contract creates an obligation of good faith, there is no corresponding action for a violation of that obligation.

> "The fact that every contract imposes an obligation to act in good faith does not create a cause of action for a violation of that obligation, and, as discussed above, this court has never recognized a cause of action for failure to act in good faith. Country Corner adduces no authority or argument for why this court should now recognize a new tort for failure to act in good faith or how such a recognition can be reconciled with our previous case law

which only recognizes the tort of bad faith against insurance companies. Without a cogent reason supported by convincing authority for taking this step, we decline to recognize this new tort in Arkansas."

373 Ark. 591, —— S.W.3d ——, ——, 2008 WL 2287217, *3 (2008) (quoting *Country Corner Food and Drug, Inc. v. First State Bank and Trust Co. of Conway,* 332 Ark. 645, 655–656, 966 S.W.2d 894, 898–899 (1998)). Accordingly, Arkansas does not currently recognize a cause of action (in contract or tort) for violation of the obligation to act in good faith. The Prices have set forth a claim for breach of contract, and may present evidence as to their damages arising from such breach,[17] but default judgment is not granted on their claim for ASC's alleged failure to act in good faith.

### Claim 7—Breach of Contract and Wrongful Foreclosure

■■■■ The Prices also allege that ASC violated the terms of their Note by failing to notify them of a change in their interest rate before applying a new rate. Section 4(F) of the Note provides,

> The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me

---

**17.** "Damages recoverable from breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached." *Dawson v. Temps Plus, Inc.,* 337 Ark. 247, 987 S.W.2d 722 (1999). "Ordinarily, punitive damages for breach of contract are not allowed." *L.L. Cole & Son, Inc. v. Hickman,* 282 Ark. 6, 8, 665 S.W.2d 278, 280 (Ark.1984) (citing 5 *Corbin,* Contracts 438 (1964); 11 *Williston,* Contracts 210 (3d ed.1968); *McClellan v. Brown,* 276 Ark. 28, 632 S.W.2d 406 (1982); *Curtis v.*

*Partain,* 272 Ark. 400, 614 S.W.2d 671 (1981); *Snow v. Grace,* 25 Ark. 570 (1869)). However, attorney fees may be awarded in a breach of contract action pursuant to Ark.Code Ann. § 16–22–208 provided the recovery is primarily on breach of contract claims. *In re Fowler,* 395 B.R. 647 (Bankr.W.D.Ark.2008) (citing *Reed v. Smith Steel, Inc.,* 77 Ark.App. 110, 121, 78 S.W.3d 118, 126 (2002); *Meyer v. Riverdale Harbor Mun. Prop.,* 58 Ark.App. 91, 947 S.W.2d 20, 22 (1997)).

and also the title and telephone number of a person who will answer any question [sic] I may have regarding the notice.

The Prices allege that according to the Customer Account Activity Statement provided by ASC, ASC increased their interest rate in or around April of 2006, from 7.6% to 10.6%, and increased their monthly payment amount from $699.02 to $905.21, but failed to send them notice of these changes. Taking these allegations as true, the provisions of the Note have been breached, and the Prices are entitled to default judgment on this count and may present evidence as to their damages at the hearing to be set by subsequent notice.[18]

### CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that Default Judgment is granted on Claims Five, Six and Seven of Plaintiffs' Complaint, and denied on all other claims; it is further

**ORDERED** that $2,367.81 in fees and charges included in ASC's proof of claim are hereby disallowed along with $2,796.08 in monthly mortgage payments which the Prices allege they paid but ASC did not record; and it is further

**ORDERED** that a hearing on damages will be set by subsequent notice.

**IT IS SO ORDERED.**

---

**18.** To the extent the Prices sue for "wrongful foreclosure," the Court is not aware of such a cause of action in Arkansas, particularly where the home was only placed in "foreclosure status" and not actually foreclosed. However, damages recoverable as a result of ASC's other breaches may include, if proven, fees associated with the foreclosure proceedings as well as the harm caused by the attempted foreclosure forcing the Prices into bankruptcy (e.g., damage caused by having a bankruptcy listed on one's credit report).