In re Donald Edward MOFFITT, and Phyllis Joy Moffitt, Debtors.

Donald Edward Moffitt, and Phyllis Joy Moffitt, Plaintiffs

v.

America's Servicing Company, Defendant.

Bankruptcy No. 3:04–bk–22708 E.
Adversary No. 3:07–ap–01054.

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

June 22, 2009.

---

Debra J. Reece, Reece Law Firm, PLLC, Little Rock, AR, Joel G. Hargis,

Crawley & DeLoache, PLLC, Jonesboro, AR, for Plaintiffs.

Blair B. Evans, Baker, Donelson, Bearman, Caldwell & Ber, Memphis, TN, for Defendant.

## ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING MOTION TO DISMISS IN PART

AUDREY R. EVANS, Bankruptcy Judge.

 Now before the Court is the *Motion to Dismiss Amended Complaint Seeking Damages in Core Adversary Proceeding* and brief in support filed by America's Servicing Company and Wells Fargo Bank, N.A. ("**ASC**") on July 29, 2008 (the "**Motion to Dismiss**"). ASC filed a *Supplemental Motion to Dismiss Amended Complaint Seeking Damages in Core Adversary Proceeding* on August 22, 2008 (the "**Supplemental Motion to Dismiss**"). Plaintiffs/Debtors (the "**Moffitts**") filed a response and brief on September 22, 2008, and ASC filed its reply and brief on November 5, 2008. The Court heard oral argument on November 12, 2008, and took the matter under advisement. On May 21, 2009, the Court entered an *Order Granting Motion to Dismiss in Part*, ruling on the jurisdictional questions presented by ASC's Motion to Dismiss and Supplemental Motion to Dismiss and reserving that portion of ASC's Supplemental Motion to Dismiss claims one through six of the Moffitts' complaint for failure to state a claim

upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6) and Fed. R. Bankr.P. 7012. The parties' arguments are set forth in detail below along with the applicable law and the Court's decisions. The facts relevant to the case were set forth in this Court's Memorandum Opinion dated June 18, 2008,[1] and will be restated here only to the extent necessary. Any additional facts included in this Order are taken from the Court's docket and the record in this adversary proceeding.[2]

### FACTUAL SUMMARY

The Moffitts filed a chapter 13 bankruptcy on October 22, 2004. Their chapter 13 plan provided that their mortgage arrearage would be brought current over a period of five years in accordance with 11 U.S.C. § 1322(b)(5), and that regular mortgage payments would be paid through their plan. The Moffitts' plan was confirmed on April 28, 2005. Everhome, the Moffitts' original mortgage servicer, filed two Amended Proofs of Claim in September 2005. The latest Amended Proof of Claim filed on September 7, 2005, asserted an arrearage of $8,535.79, which included late charges of $40.65; foreclosure fees and costs of $3,110.31; bankruptcy fees and costs of $250.00; $758.25 for property inspections; and prior bankruptcy fees of $650.00. In November 2005, just two months after Everhome had filed its Amended Proofs of Claim, ASC notified the Moffitts it was the new servicer of their loan. Mrs. Moffitt filed two *pro se*

---

1. *See Moffitt v. America's Servicing Company (In re Moffitt)*, 390 B.R. 368 (Bankr.E.D.Ark. 2008).

2. ASC has asked the Court to take judicial notice as permitted by Fed.R.Evid. 201 of all pleadings, claims, and loan documents of record in the Moffitts' bankruptcy case. "Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6)

motion to dismiss." *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.1999) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hollis v. United States Dep't of Army*, 856 F.2d 1541, 1543–44 (D.C.Cir.1988)). Accordingly, the Court takes judicial notice of the docket in this case and the record previously made in this adversary proceeding.

objections to the Amended Proofs of Claim, responses in defense of the Amended Proofs of Claim were filed by ASC, and hearings were set on those objections. However, ultimately the matter was reported to the Court as settled or moot, and a final hearing was not held. Subsequently, the Court entered an Order on March 27, 2006, approving ASC's claim in the total amount of $14,409.13 (**"Order Approving Claim"**) and directing the Moffitts to begin making their monthly mortgage payments directly to ASC (which they did). The same day, the Moffitts paid ASC an additional $10,000 with written directions that this sum be applied to the principal on their loan. On April 3, 2006, ASC applied the $10,000 payment to the Moffitts' arrearage, $4,795.28 in fees, and future months' mortgage payments. The Moffitts received their Chapter 13 discharge on April 6, 2006. Subsequently, the Chapter 13 Trustee (the **"Trustee"**) made final disbursements to ASC totaling $9,581.57 (in accordance with the Order Approving Claim). The Trustee filed the *Trustee's Final Report and Account* on June 5, 2006, showing that a total of $14,409.13 was paid on ASC's claim, which included the final disbursement of $9,851.57. The Moffitts' bankruptcy case was closed on June 7, 2006, and reopened on July 31, 2006, in order to file this adversary proceeding. The adversary proceeding was originally filed against both Everhome and ASC, but the Plaintiffs reached a settlement with Everhome in December 2007, resulting in the dismissal of all its claims against Everhome.

## LEGAL STANDARD

The standard for dismissal under Federal Rule of Bankruptcy Procedure 7012(b)(6) is as follows:

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a defendant to a complaint, counterclaim, or cross-claim may move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss for failure to state a claim will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, the purpose of Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356, at 294 (2d ed.1990). In appraising the sufficiency of a complaint for Rule 12(b)(6) purposes, the court must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990); *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). Nevertheless, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *See Westcott,* 901 F.2d at 1488 (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)).

*In re Russ,* 1997 WL 188449, at * 1–2 (Bankr.D.Minn. Apr.18, 1997). Further,

When a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the allegations of

254

fact, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326–327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In order to streamline litigation and dispense with needless discovery and fact-finding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable. *Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable.... [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

*Ray v. American Airlines, Inc.,* 2008 WL 3992644, *3 (W.D.Ark.2008).

**DISCUSSION**

■ In addition to alleging that claims one through six of the Moffitts' Amended Complaint fail to state a claim upon which relief may be granted, ASC argues that their complaint should be dismissed for two additional reasons. First, because the Moffitts obtained a divorce on February 13, 2006, shortly (two months) before their chapter 13 case completed, but did not notify the Court or otherwise separate their cases, and second, because only Mr. Moffitt owned the home lived in by the Moffitts and only Mr. Moffitt executed the Promissory Note secured by the mortgage at issue in this case. ASC, however, has raised no legal argument as to why these facts invalidate the Moffitts' claims. The Court is not persuaded either reason is sufficient to dismiss the case, and there is no allegation that Mr. Moffitt is not a real party in interest capable of bringing this action. ASC seeks dismissal of the entire proceeding based on the in-

clusion of Mrs. Moffitt as a Plaintiff; the Court finds her role as a Plaintiff does not warrant dismissal of the case.

*Claim One: § 502(j) Reconsideration of Claim*

■ The Moffitts' first cause of action is a claim under 11 U.S.C. § 502(j) which asks the Court to reconsider an Order entered March 27, 2006, allowing ASC's claim in the amount of $14,409.13. The Moffitts allege that this order was based on a payoff given to the Chapter 13 Trustee (the **"Trustee"**) by ASC which included attorneys' fees that were not included on a proof of claim. Specifically, the Moffitts allege that Everhome originally requested $250 in attorneys' fees on its proof of claim, but that neither ASC nor Everhome ever requested any additional attorneys' fees. The Moffitts allege that Everhome filed two Amended Proofs of Claim in September 2005, and that the second Amended Proof of Claim, filed on September 7, 2005, asserted an arrearage of $8,535.79, which included late charges of $40.65; foreclosure fees and costs of $3,110.31; bankruptcy fees and costs of $250.00; $758.25 for property inspections; and prior bankruptcy fees of $650.00 (totaling $4,809.21 in fees and charges). The Moffitts also allege that in November 2005, just two months after Everhome had filed its Amended Proof of Claim alleging an arrearage of $8,535.79, ASC sent them a letter notifying them that ASC was the new servicer of their account and informing them that the amount needed to bring their loan current was $5,214.08. The arrearage amount that ASC ultimately received based on the March 27, 2006 Order was $8,535.79, the same as that asserted on the September 7, 2005 Amended Proof of Claim.

The Moffitts further allege that they requested information from ASC before

their case was closed, but were never told that ASC included unlawful fees and charges in the payoff amount, and therefore did not have the information they needed to object to the payoff amount. They allege that they only realized they had paid these fees when they received their first loan history in response to a Qualified Written Request ("QWR") in late 2006.[3] At that time, they learned that the following fees and charges had been added to their account after the September 7, 2005 proof of claim was filed:

| 11/23/05 | Attorney fee | $ 150.00 |
| 11/23/05 | Property inspection fee | $ 15.00 |
| 12/28/05 | Property inspection fee | $ 15.00 |
| 01/20/06 | Late charge | $ 13.04 |
| 01/26/06 | Attorney fee | $1,000.00 |
| 01/30/06 | Property inspection fee | $ 15.00 |
| **Total charges:** | | **$1,208.04** |

The Moffitts also obtained an e-mail that had been sent from an ASC representative to the Chapter 13 Trustee's office, submitted as Exhibit 13 to the Moffitts' Complaint. The e-mail specifically lists the following fees and costs: $13.04 in late charges; $4,737.24 in attorney's fees and costs; and $45.00 for inspections. These amounts total $4,795.28.

■ ASC maintains that during the administration of the Moffitts' bankruptcy case, the Moffitts objected to Everhome's September 2005 Amended Proof of Claim, a responsive pleading was filed defending the claim, and subsequently, the *Order Allowing Claim and to Resume Payments on a Continuing Debt* was entered on March 27, 2006, resolving the Trustee's Motion to Allow Amended Claim, the response, and the Moffitts' objection. ASC argues that because that order was not appealed, the Moffitts are not entitled to another opportunity to object to the claim. The Moffitts argue that they cannot be penalized for waiting until after the close of their case to object when ASC gave no notice to them or the Trustee that they were including additional amounts in the payoff figure.[4] It is true that the Amended Proof of Claim was never disallowed despite *pro se* objections filed by Ms. Moffitt, and multiple hearings set on those objections, because all was reported to the Court as settled or moot. However, the Court disagrees that this bars reconsideration of the March 27, 2006 Order allowing the claim given that the final amount awarded to ASC was ultimately applied to charges that were not included on the September 2005 Amended Proof of Claim. Further, it is widely held that § 502(j) creates an exception to the *res judicata* effect normally afforded a confirmed plan under 11 U.S.C. § 1327. *See e.g., In re Adkins*, 425 F.3d 296, 308 (6th Cir.2005) ("Reconsideration under § 502(j) can occur even after a plan is confirmed."); *In re*

---

3. As explained in the Court's June 18, 2008 Memorandum Opinion, the Moffitts had to file the QWR because ASC refused to provide information to the Moffitts on a voluntary basis even though the Moffitts wrote three letters and repeatedly called ASC. 390 B.R. at 371.

4. The Moffitts also assert in their Amended Complaint that they did not object to the proof of claim nor the amended proof of claim, both of which were filed by Everhome because their bankruptcy counsel was "negligent in its representation of the Debtors, and the Debtors should not be penalized for such conduct by their attorney." The Court notes that the Eighth Circuit has "long held that litigants choose their counsel at their own peril." *Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir.2009) (citing *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117, 118–119 (8th Cir.1997)). *See also Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir.1993); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir.1992). As such, the Court does not reconsider the March 27, 2006 Order allowing ASC's claim based on the Moffitts' allegations about their former counsel, but rather, reconsiders the order allowing claim because it allegedly included unapproved fees and charges which were unknown to the Moffitts at that time.

*Gomez,* 250 B.R. 397, 400 (Bankr.M.D.Fla. 1999) (holding that § 502(j) creates a narrow exception to the res judicata effect of § 1327 that allows reconsideration after confirmation if the debtor can establish sufficient cause).[5]

The Trustee ultimately paid ASC the amount requested in Everhome's September 7, 2005 Amended Proof of Claim ($8,535.79). However, what the Moffitts complain of is the $1,208.04 of fees and charges that were added to the Moffitts' mortgage account between the time the Amended Proof of Claim was filed and their case was closed. The Moffitts did not learn of these fees and charges until after the closing of their case, when they reopened their case and filed the QWR with ASC and obtained a breakdown of what fees and charges had been charged to their account. Taking these allegations as true, ASC in fact charged the Moffitts fees during the case without disclosing such fees to the Court or the Moffitts, and then included those fees in a final payoff. The Moffitts are entitled to an explanation of the additional fees and costs allegedly accrued during their bankruptcy case and added to their payoff without their knowledge. Accordingly, the Moffitts have alleged sufficient cause to reconsider the unappealed March 27, 2006 order allowing ASC's claim, and have therefore stated a claim for relief under § 502(j) with respect to claim one.

### Claims Three and Four: § 506(b) and Rule 2016 [6]

■ Claim three alleges that ASC charged fees which "were not part of the underlying agreement between ASC and the debtors, and the fees and costs charged by ASC, particularly in its final 'payoff' amount given to the Trustee in March 2006, are otherwise unreasonable and excessive" and in violation of 11 U.S.C. § 506(b). Claim four alleges that ASC violated Rule 2016 by charging to the Debtors' account fees which have not been approved by the bankruptcy court pursuant to § 506(b) and Rule 2016, and which were not part of the underlying agreement by and between the holder of the loan and Plaintiff. ASC argues that claims three and four should be dismissed because § 506(b) and Rule 2016 do not provide for a private right of action, and because § 506(b) does not apply to fees charged post-confirmation pursuant to the United States Supreme Court's ruling in *Rake v. Wade,* 508 U.S. 464, 468, 113 S.Ct. 2187 (1993). ASC also argues that Rule 2016 does not apply to counsel for an individual mortgage creditor in accordance with *Padilla v. GMAC Mortgage Corp. (In re Padilla),* 389 B.R. 409 (Bankr.E.D.Pa.2008), which held that Rule 2016 did not apply to a secured creditor with a long-term mortgage subject to 11 U.S.C. § 1322(b)(5).[7] ASC also implies that fees may have been accrued post-confirmation, but were not applied until later.

ASC is correct that *Rake v. Wade* held that § 506(b) has no application post-confirmation. The charges challenged by Plaintiffs occurred post-confirmation, and consequently, claim three and that portion of claim four alleging a violation of

---

**5.** *See also See Int'l Yacht & Tennis, Inc. v. Wasserman (In re Int'l Yacht & Tennis, Inc.),* 922 F.2d 659 (11th Cir.1991); *In re Layne,* 2000 WL 33943200 (Bankr.S.D.Ga.2000); *In re Bernard,* 189 B.R. 1017, 1020 (Bankr. N.D.Ga.1996); *In re Coleman,* 200 B.R. 403, 407 (Bankr.S.D.Ala.1996); *In re Lee,* 189 B.R. 692, 695 (Bankr.M.D.Tenn.1995); *In re Fryer,* 172 B.R. 1020 (Bankr.S.D.Ga.1994); *In re Immenhausen,* 166 B.R. 449, 452 (Bankr. M.D.Fla.1994).

**6.** Claim two was against Everhome only and has already been dismissed.

**7.** *See infra* note 9.

§ 506(b) must be dismissed for failure to state a claim.

 However, that portion of claim four alleging a violation of Rule 2016(a) does state a claim. Despite § 506(b)'s inapplicability to post-confirmation fees and charges, Rule 2016(a) is not limited to pre-confirmation fees. Rule 2016(a) provides, in part, "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. . . ." As stated in *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, "Rule 2016(a)'s plain language and the Congressional purpose behind the Federal Rules of Bankruptcy Procedure make 2016(a) applicable post-confirmation as well as pre-confirmation." 379 B.R. 643, 657 (Bankr.S.D.Tex.2007). *See also Payne v. Mortgage Electronic Registration Systems, Inc. (In re Payne)*, 387 B.R. 614, 638 (Bankr.D.Kan.2008) ("Fees and expenses charged by lenders after confirmation remain subject to court review for reasonableness. Post-petition fees and charges are subject to review under the debtor's plan, state law, Fed. R. Bankr.P.2016(a), and § 105.").

 With respect to ASC's argument that there is no private right of action for a violation of Rule 2016, this Court recently reviewed case law in *Price v. ASC (In re Price)*, 403 B.R. 775 (Bankr.E.D.Ark.2009), concerning whether there is a private right of action and the appropriate remedy for failure to file a Rule 2016 application regardless of whether a private right of action exists or not. That discussion is quoted here:

> While some courts have found that there is no private right of action under § 506(b) or Rule 2016, and that § 105(a)

cannot be used to create such a right, *see e.g., In re Joubert*, 411 F.3d 452 (3rd Cir.2005), others have declined to reach the issue finding that disgorgement is an appropriate remedy whether there is a private right of action or not. For instance, the *Sanchez* court did not address whether the debtors in that case could maintain a private right of action under § 506 and Rule 2016, but concluded that the Court could use its equitable powers under § 105(a) to enforce the provisions of § 506 and Rule 2016. 372 B.R. [289] at 309–310 [Bankr.S.D. Tex. 2007] ("[A] bankruptcy court is well within its authority if it exercises its equitable powers under § 105(a) to achieve a result the Code clearly requires.") (citing *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478–479 (5th Cir.1994)). The *Sanchez* court ordered disgorgement of monies improperly collected from the debtors' estate as a sanction against the mortgage creditor for its failure to comply with § 506(b) and Rule 2016. *Id.* at 312. Other courts relying on § 105 to rectify violations of § 506(b) and Rule 2016 have similarly limited the relief granted to disgorgement or restitution of fees improperly awarded. *See e.g., Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D.Tex.2008); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 667–668 (Bankr.S.D.Tex. 2007); *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 667–669 (Bankr.W.D.N.C.2000). In *Padilla v. Wells Fargo*, the bankruptcy court acknowledged that it could not use § 105 to create a substantive right not found in the Code, or to contravene existing Code provisions, but held that, "ordering disgorgement of monies collected in violation of a Bankruptcy Rule, § 506(b), or a

confirmed Chapter 13 plan is a necessary action to enforce and implement court orders and rules." 379 B.R. at 667. The *Padilla v. Wells Fargo* court goes on to note, however, that the court cannot order disgorgement if no improper fees were actually collected. *Id.*

403 B.R. at 778–779.[8] The Court agrees with the *Sanchez* and *Padilla v. Wells Fargo* courts that regardless of whether there is a private right of action under Rule 2016(a), bankruptcy courts have the authority to disgorge monies improperly collected from a bankruptcy estate in violation of Rule 2016(a).

■ Further, the Court finds that Rule 2016(a) does in fact apply to counsel for mortgage creditors, and there is no conflict between § 1322(b)(2), (5) and Rule 2016(a) as argued by ASC.[9] As stated in *In re Padilla v. Wells Fargo,*

... Bankruptcy Rule 2016(a) does not conflict with § 1322(b)(2). Section 1322(b)(2) is an anti-modification provision that prevents a plan from modifying Wells Fargo's and Novastar's pre-petition contract rights. Rule 2016(a) does not modify any rights. As Wells Fargo and Novastar note, Rule 2016(a) is a procedural rule, not a substantive provision. Rule 2016(a) merely governs how substantive rights are implemented. Rule 2016(a) does not deny Wells Fargo or Novastar the ability to charge and collect post-petition Reimbursable Expenses. Rule 2016(a) only requires Wells Fargo and Novastar to receive approval for their Reimbursable Expenses.

379 B.R. at 657.[10] *See also In re Sanchez,* 372 B.R. at 306 ("It is not difficult to harmonize § 506(b) and Rule 2016 with § 1322(b)(2), ... Requiring a creditor to file a Rule 2016 application with the bank-

8. *See also Myles v. Wells Fargo Home Mortgage, Inc. (In re Myles),* 395 B.R. 599, 609 (Bankr.M.D.La.2008) ("A bankruptcy court does indeed have the authority under 11 U.S.C. § 105 to order creditors to disgorge monies improperly obtained from debtors. However, that is not the same as recognizing a debtor's private right of action for damages under a specific Bankruptcy Code section.") (citing *Sanchez* ).

9. ASC relies on *Padilla v. GMAC Mortgage Corp. (In re Padilla),* 389 B.R. 409 (Bankr. E.D.Pa.2008) to support this argument. However, *Padilla v. GMAC* specifically held that Rule 2016(a) had no application in that case because "at no point did the creditor seek payment of legal expenses 'from the estate', as required" under Rule 2016(a). 389 B.R. at 443. The *Padilla v. GMAC* court did, however, state that despite "a rational, and perhaps even compelling case," it found no basis in the code or the rules for imposing "a requirement that a secured creditor provide a debtor with notice of postpetition legal expenses incurred by the creditor and chargeable to the debtor under the mortgage being treated under § 1322(b)(5) of the debtor's chapter 13 plan." *Id.* at 437.

10. The *Padilla v. Wells Fargo* court also set forth the policy reasons why Rule 2016(a) should apply to a mortgage creditor's post-confirmation legal expenses, stating:

The Court can not administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for Reimbursable Expenses that creditors seek to collect post-confirmation. Without Rule 2016(a) applications, the Court can not ensure compliance with § 1327(a), protect a debtor's rights under 1322(b)(5), or protect a debtor's right to a "fresh start" after completing a chapter 13 plan.

379 B.R. at 659. This Court notes that a debtor may never achieve a fresh start unless a mortgage creditor is required by law to notify debtors of all charges and fees assessed against their account on a regular basis throughout their bankruptcy, when such fees and charges are assessed, whether or not the creditor seeks payment from the debtor's estate. This problem seems to require a legislative remedy, and not one this Court can provide.

ruptcy court in order to collect fees from the estate does not modify that creditor's right to collect those fees. Similarly, requiring a creditor to affirmatively demonstrate that its fees are reasonable does not modify that creditor's right to collect such fees. Creditors have a panoply of contractual rights under § 1322(b)(2), but the right to charge *unreasonable* fees has never been among them."); *Payne*, 387 B.R. at 638 ("While § 1322(b)(2) preserves a lender's pre-petition rights and protects them from modification through the plan, a 'contractual right to seek reimbursement is not the equivalent of a right to collect an undisclosed charge from the estate.' ") (quoting *Jones v. Wells Fargo Home Mortg. (In re Jones)*, 366 B.R. 584, 600 (Bankr.E.D.La.2007)).[11]

In claim four, Plaintiffs allege that ASC charged and collected from their bankruptcy estate undisclosed fees and charges without filing an application as required by Rule 2016(a). Taking those allegations as true (and without deciding whether payment was in fact paid out of the Moffitts' estate), the Court finds the Plaintiffs have stated a claim for relief in claim four.

***Claim Five: § 524 Discharge Injunction***

The Moffitts' fifth claim alleges that Everhome and ASC violated the discharge injunction. As the Everhome claims were previously dismissed, the Court addresses only the allegations against ASC. The Moffitts claim that ASC violated the discharge injunction by (1) seeking to collect excessive and improper fees that were neither applied for nor approved by the Court; (2) applying the Debtors' $10,000 principal check and the Trustee's payoff amount of $9,851.57 toward such excessive and improper fees; and (3) misapplying the same $10,000 principal check and $9,851.57 Trustee payoff amount by holding them in suspense and not properly applying them toward indebtedness. ASC moves to dismiss this claim because the debt owed to ASC was not discharged pursuant to 11 U.S.C. § 1328(a) and the Discharge Order, both of which provide that debts provided for under § 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan is due are not subject to the discharge. The Moffitts respond that their allegations under § 524 do not involve post-discharge mortgage payments. They contend that the unapplied for fees were unreasonable *per se*, were not collectible under the plan, and are therefore dischargeable. In support, the Moffitts cite *In re Slick*, 2001 WL 1913862, 2002 Bankr.LEXIS 772 (Bankr.S.D.Ala.2002), and *Wells Fargo Bank v. Jones*, 391 B.R. 577 (E.D.La.2008), for the proposition that undisclosed charges are discharged. The Moffitts' theory as articulated in their response to ASC's Supplemental Motion to Dismiss is that payment of these charges out of estate property post-discharge is a violation of the discharge injunction.

---

11. *But see In re Booth*, 399 B.R. 316 (Bankr. W.D.Ark.2009) (finding that "in the absence of local rules or court-sanctioned Chapter 13 form plans that provide otherwise, there is no requirement that creditors seek approval of their attorney's fees pursuant to Federal Rule of Bankruptcy Procedure 2016.") (citing *In re Collins*, 2007 WL 2116416 at * 16 (Bankr. E.D.Tenn. July 19, 2007); *In re Aldrich*, 2008 WL 4185989, at *3 (Bankr.N.D.Iowa Sept.4, 2008); *In re Hudak*, 2008 WL 4850196, at *7 (Bankr.D.Colo. Oct.24, 2008)); *In re Alanis*, 316 B.R. 323, 325 (Bankr.W.D.Ark.2004) (holding that there is no requirement in the bankruptcy code or rules that a creditor must obtain prior approval of its post-petition fees before including those fees in its proof of claim, but acknowledging that the fees are subject to review for reasonableness under § 506(b)); *In re Manus*, 324 B.R. 85, (Bankr. W.D.Ark.2005) (same).

A review of case law on this subject reveals a split in the decisions. While the *Slick* case speaks only of charges that could have been requested under § 506(b), another more recent case supports the Moffitts' theory that undisclosed fees and charges incurred during the bankruptcy case are in fact discharged. In *In re Eddins*, the Bankruptcy Court for the Northern District of Mississippi explained:

> In its motion to dismiss, GMAC has asserted that it cannot be liable for a violation of the discharge injunction because a debt treated under § 1322(b)(5) is excepted from discharge pursuant to § 1328(a)(1). While GMAC's reading of the statute is literally correct, it fails to capture the statute's purpose which is to except from discharge those long-term debt obligations that would obviously remain owing after the completion of the Chapter 13 plan. This exception does not allow a creditor holding a long-term debt to surreptitiously assess improper charges prior to the discharge and then to collect these charges with impunity once the discharge is granted. This court's order, which determines that the long-term debt is current and that all defaults are cured, is an additional mechanism to prevent Chapter 13 debtors from being "blind sided" by creditors who demand otherwise unknown fees and charges immediately after debtors emerge from bankruptcy protection. Clearly, if there are legitimate charges which should have survived the plaintiffs' Chapter 13 discharge, there will be no violation of the § 524(a)(2) discharge injunction. However, if these charges should have been included as a part of the discharge, but were inappropriately omitted or concealed, and collection activities were undertaken subsequent to the discharge, then an actionable violation might exist. Again, proof will have to be developed so that the court can

determine exactly what happened concerning the indebtedness owed by the plaintiffs.

2008 WL 4905477, *2 (Bankr.N.D.Miss. 2008). The opposite view is expressed in *Padilla v. GMAC*, 389 B.R. at 419, where that court stated:

> Most pertinent in the present case is the express exception to the discharge set forth in § 1328(a). This exception applies to claims provided for in the plan under § 1322(b)(5). Here, because the Confirmed Plan provided for GMACM's claim under § 1322(b)(5), GMACM's claim was expressly excepted from the discharge the Debtor received at the conclusion of her case. *E.g., Smith v. Keycorp Mortgage, Inc.*, 151 B.R. 870, 877 (N.D.Ill.1993). It follows that GMACM could not have violated the Debtor's discharge rights under 11 U.S.C. § 524(a) when it attempted to collect a charge that it asserted fell due under the subject note and mortgage.

Other courts hold that a claim for post-confirmation debt should pass through the bankruptcy unaffected by the debtor's discharge as a claim not provided for under 11 U.S.C. § 1328. *See Telfair v. First Union Mortgage Corp. (In re Telfair)*, 224 B.R. 243, 248 (Bankr.S.D.Ga.1998) (post-confirmation attorneys' fees were not provided for by the debtor's plan nor allowed via the claims allowance process, and were therefore not discharged under § 1328); *In re Guevara*, 258 B.R. 59, 61 (Bankr. S.D.Fla.2001) (because plan did not provide for increases in taxes and insurance, the debtor's obligation for these expenses was not discharged).

■ The Court concludes, in accordance with the reasoning of *In re Eddins*, that while long-term debts provided for under § 1322(b)(5) are not discharged, a debt for undisclosed fees and charges in-

curred (but not paid) during the bankruptcy case *may* be subject to a debtor's discharge. In this case, the Moffitts allege that a portion of their voluntary $10,000 payment was applied towards undisclosed fees and charges *prior* to their discharge in violation of the automatic stay (discussed below), and that later, *after* receiving their discharge, a portion of the trustee's final payment to ASC was applied to those same fees and charges in violation of the discharge injunction. Taking the Moffitts' allegations as true, the Court concludes that claim five states a claim upon which relief may be granted although proof must be developed to show that these charges should have been included in the Moffitts' discharge, and are not in fact legitimate charges that should have survived the Moffitts' Chapter 13 discharge.

### Claim Six: § 362, Violation of the Automatic Stay

Claim six alleges that ASC's misapplication of the Moffitts' $10,000 payment before their discharge and ASC's misapplication of the funds paid by the Trustee after the Moffitts' discharge were actions taken to control property of the estate and therefore constitute gross violations of the automatic stay under 11 U.S.C. § 362(a)(3). ASC moves to dismiss claim six with respect to all allegations occurring after the Moffitts' discharge was entered because the stay is dissolved upon entry of the discharge pursuant to 11 U.S.C. § 362(c)(2) (providing that the automatic stay continues until the case is closed or dismissed, or a discharge is granted or denied). ASC further argues that the accrual or assessment of fees to an account when there is no attempt to collect the fees from the debtor during the case is not a violation of the automatic stay. The Moffitts respond that the applicable code section is § 362(c)(1) which provides that the automatic stay continues to apply to prop-

erty of the estate "until such property is no longer property of the estate," and that pursuant to 11 U.S.C. § 1306(a)(1), property of the estate includes property that a debtor acquires before the case is closed or dismissed or converted to another chapter under the Code. The Moffitts contend that ASC's actions in misapplying the $10,000 received from the Moffitts and the Trustee's final payment prior to the closing of their case were actions against property of the estate taken prior to the closing of their case thereby violating the automatic stay. ASC replies that despite § 1306(a)(1), the Moffitts' confirmed plan provided that "[t]he property of the estate shall continue to be property of the estate until such time a discharge is granted or the case is dismissed." ASC therefore argues that the discharge entered on April 6, 2006, terminated the Moffitts' estate and ended the protection of the automatic stay.

 Due to the plan's specific language regarding when property of the estate ceased to exist, the Court must find that under § 362(c)(1), the automatic stay was no longer in effect once the Moffitts' discharge was entered on April 6, 2006. Accordingly, to the extent claim six seeks a determination that the automatic stay was violated after April 6, 2006, it fails to state a claim for relief as there was no automatic stay in place after that date. However, the Moffitts also allege that the $10,000 they paid ASC prior to their discharge was applied on April 3, 2006, in part to the fees they object to in claims one and four. ASC has asserted that it only accrued fees to the account and did not seek to collect those fees, but the Moffitts allege that the $10,000 payment was misapplied *before* the discharge was entered. Taking as true the Moffitts' allegation that the $10,000 payment was property of the estate and applied to fees on

April 3, 2006, ASC's actions in misapplying that payment may constitute a violation of the automatic stay,[12] and accordingly, that portion of claim six asserting a violation of the automatic stay prior to the date of discharge states a claim for purposes of Rule 12(b)(6).

## CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that ASC's Supplemental Motion to Dismiss is **GRANTED IN PART**; claim three, that portion of claim four alleging a violation of 11 U.S.C. § 506(b), and that portion of claim six alleging a violation of the automatic stay after the Plaintiffs' discharge are **DISMISSED**; and it is further

**ORDERED** that ASC's Supplemental Motion to Dismiss is **DENIED IN PART**; claims one, five, that portion of claim four alleging a violation of Rule 2016, and that portion of claim six alleging a violation of

the automatic stay before the Plaintiffs' discharge are not dismissed.

**IT IS SO ORDERED.**

---

12. Many courts have concluded that the mere assessment or recording of post-petition charges does not violate the automatic stay. *See Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir.2003); *Padilla v. Wells Fargo*, 379 B.R. at 664 (citing *Mann*); *Jones*, 366 B.R. at 600, n. 64 (citing *Mann*). However, as this Court noted in *Price, supra*, the misapplication of estate property can constitute a violation of the automatic stay.

> If regular mortgage payments were applied to late fees or other charges post-petition, the automatic stay was violated as the lender took action "to obtain possession of property of the estate or … to exercise control over property of the estate." § 362(a)(3). *See Payne v. Mortgage Electronic Registration Systems, Inc. (In re Payne)*, 387 B.R. 614, 638 (Bankr.D.Kan. 2008) ("Actions taken post-petition such as improperly applying trustee payments, refusing to remove disallowed fees, attempting to collect disallowed fees from debtors via a payoff letter, and assessing and col-

lecting post-petition fees without notice to debtors can violate the stay.") (internal citations omitted); *In re Sanchez*, 372 B.R. at 314–315 (finding violation of automatic stay where mortgage creditor unilaterally assessed charges and subsequently paid itself for charges out of chapter 13 plan payments); *Jones v. Wells Fargo Home Mortg. (In re Jones)*, 366 B.R. 584, 599–600 (Bankr.E.D.La.2007) (finding that mortgage creditor violated automatic stay by "assessing postpetition charges and diverting estate funds for their satisfaction.") (affirmed in part and reversed in part in *Wells Fargo Bank v. Jones*, 391 B.R. 577 (E.D.La.2008)). *But see Padilla v. Wells Fargo*, 379 B.R. at 664–666 (concluding that misallocation of funds, such as the posting of an item from one internal account to another, "is not an act to obtain possession of estate property" and therefore does not violate the automatic stay).

403 B.R. at 789.